[No. 14324. In Bank. — December 2, 1892.],

SAN GABRIEL VALLEY LAND AND WATER COMPANY, Respondent, v. WITMER BROTHERS COMPANY, Appellant.

| | |
|---|---|
| 96 | 623 |
| d121 | 608 |
| 96 | 823 |
| 124 | 503 |
| 96 | 623 |
| 131 | 111 |
| 96 | 623 |
| 144 | 736 |
| 96 | 623 |
| o145 | 56 |
| 145 | 57 |
| 145 | 58 |
| 145 | 60 |
| 145 | 61 |

Taxation — Assessment — Interest of Mortgagee — Description of Mortgaged Premises — Division into Blocks and Lots. — An assessment of taxes to a mortgagee on the mortgage interest in land, which describes the mortgaged land as divided by the owner into blocks and lots before the levy of the assessment, sufficiently describes the land, although the mortgage described the land as an entire tract in a specified section and township, where it appears that the blocks and lots assessed to the mortgagee constitute the identical land described in the mortgage, and no more, and that the assessment is in substantial conformity to the statute, and in proper form for the assessment of a mortgage interest in town lots.

Id. — Recovery of Tax Paid by Mortgagor — Payment of Mortgage to Assignee — Action against Assignor Assessed. — Section 3627 of the Political Code, which gives the mortgagor of land who has paid the mortgage tax the right to deduct the amount of the tax from the mortgage at the time of payment, is permissive, and not mandatory or exclusive, in its terms, and does not prevent a mortgagor who has paid the mortgage debt without deduction of the tax to an assignee of the

holder of the mortgage, to whom it was assessed, and who has been compelled to pay the mortgage tax to relieve his property from the lien, from bringing an action to recover the amount paid from the one to whom the mortgage was assessed, whose duty it was to pay it, and whose debt it is.

ID. — EVIDENCE — VALIDITY OF ROAD AND SCHOOL TAX — ASSESSMENT-BOOK — PRIMA FACIE CASE. — The introduction in evidence of an assessment-book, which is by statute *prima facie* evidence, not only of the assessment and of the amount of the unpaid taxes, but also of the fact that all the forms of law in relation to the assessment and levy have been complied with, is sufficient proof of the validity of a road tax and special school tax, which are required to be levied by the supervisors and to appear upon the assessment-book.

ID. — ASSESSMENT TO OWNER OF MORTGAGE — ASSIGNMENT BEFORE LEVY — PERSONAL LIABILITY OF ASSIGNOR. — The owner of a mortgage is personally liable for the payment of a tax assessed upon it during his ownership of it, and his liability does not depend upon his continued ownership of the mortgage until after the levy of the tax or until the time for payment arrives, and one who owned a mortgage on the first Monday of March, and to whom it was assessed, is not discharged by a mere assignment of the mortgage before the levy of the tax in October of the same year.

ASSUMPSIT FOR MONEY PAID — IMPLIED REQUEST. — Where a plaintiff, either by compulsion of law, or to relieve himself from liability, or to save himself from damage, has paid money, not officiously, which the defendant ought to have paid, a count in *assumpsit* for money paid will be supported. In such case the law implies a request on the part of the defendant and a promise to repay, and the plaintiff has the same right of action as if he had paid the money at the defendant's express request.

APPEAL from a judgment of the Superior Court of Los Angeles County, and from an order denying a new trial.

The facts are stated in the opinion of Commissioner Vanclief.

*Dooner & Burdett,* for Appellant.

*Judson, Hester & Russell,* for Respondent.

The COURT. — After further consideration, we adhere to the opinion heretofore prepared by Commissioner Vanclief and adopted by the court at the former hearing, and for the reasons stated in that opinion, the judgment and order appealed from are affirmed.

McFARLAND, J., DE HAVEN, J., GAROUTTE, J., SHARPSTEIN, J.

HARRISON, J., dissenting. — I dissent, upon the reasons stated by me at the former decision of the case.

BEATTY, C. J., dissenting. — I dissent.   The case turns altogether upon the meaning of section 4 of article XIII. of the constitution, which reads as follows: —

"Sec. 4.   A mortgage, deed of trust, contract, or other obligation by which a debt is secured, shall, for the purposes of assessment and taxation, be deemed and treated as an interest in the property affected thereby.   Except as to railroad and other *quasi* public corporations, in case of debts so secured, the value of the property affected by such mortgage, deed of trust, contract, or obligation, less the value of such security, shall be assessed and taxed to the owner of the property, and the value of such security shall be assessed and taxed to the owner thereof, in the county, city, or district in which the property affected thereby is situate.   The taxes so levied shall·be a lien upon the property and security, and may be paid by either party to such security; if paid by the owner of the security, the tax so levied upon the property affected thereby shall become a part of the debt so secured; if the owner of the property shall pay the tax so levied on such security, it shall constitute a payment thereon, and to the extent of such payment, a full discharge thereof; provided, that if any such security or indebtedness shall be paid by any such debtor or debtors, after assessment and before the tax levy, the amount of such levy may likewise be retained by such debtor or debtors, and shall be computed according to the tax levy for the preceding year."

This section of the constitution not only defines the reciprocal rights and obligations of mortgagor and mortgagee with respect to the payment of the taxes assessed or assessable against their respective interests in the mortgaged premises, but was evidently intended to provide a simple and effective remedy for their enforcement.   As security for the collection of the whole tax on both interests, the state reserves to itself a first lien

upon the land, — a lien superior to the mortgage lien. To secure the mortgagee for taxes paid on the mortgagor's interest, the effect of these provisions is a virtual transfer to him of the claim and lien of the state by tacking it to the mortgage.

But the whole section being intended mainly for the benefit of the mortgagor, we find, as we should naturally expect to find, that especial pains have been taken to secure the enforcement of his right. His land being subjected to a lien in favor of the state, not only for the tax which it is his duty to pay, but also for the tax which it is the duty of the mortgagee to pay, he must, for his own protection, see that both are discharged. It is therefore provided that he may pay the tax on the mortgagee's interest, and that such payment shall count as a payment on and as a full discharge *pro tanto* of the mortgage debt. This is an ample and perfect remedy and protection to the mortgagor when he desires to pay off his mortgage at any time after the accrued taxes have become payable. He has only to pay the tax assessed to the mortgagee and deduct the sum so paid from the amount of his debt.

But there was another case to be provided for. It was foreseen that payment of mortgages would frequently be made after the taxes had accrued and become a lien, and before they were payable or their amount ascertained by the order establishing the rate and making the levy. The taxes for each fiscal year accrue on the first Monday of March preceding (Const., art. XIII. sec. 5), and when assessed, take effect and become a lien from that date (Pol. Code, sec. 3718); but the rate to be levied being dependent upon the amount of the assessment, the levy cannot be made until assessments have been equalized and the roll completed. The statute accordingly designates the first Monday of October as the date for making the levy. (Pol. Code, sec. 3714.) In other words, there is an interval of at least seven months in each year, as the law stands, after the mortgagee's tax has accrued, and before it is payable. And this case, as I have said, was foreseen by the framers of the constitution, and ex-

press provision made in the last clause of the section above quoted for the protection of the mortgagor who pays off his mortgage during such interval. Without this provision he would, no doubt, have had another remedy in case of neglect by the mortgagee to pay the tax assessed upon the security. That is, he could have paid the tax himself, and have recovered it back in an action against the mortgagee for money paid. The authorities cited in the Commissioner's opinion fully sustain this proposition. But this remedy would always be expensive and vexatious, and often ineffectual by reason of the insolvency of the mortgagee, and therefore the constitution gave a simpler — an entirely inexpensive and perfectly effacious — remedy, by allowing the mortgagor in such case to retain out of the amount due on the mortgage the amount of the accrued taxes, computed according to the tax levy of the previous year.

The question is, whether this remedy is exclusive, — whether, in other words, the new remedy, so given, has the effect of abrogating the remedy which the law would have afforded in the absence of any such constitutional or statutory provision. And this, in my opinion, depends upon whether the change of remedy also involves a change of right. If a remedy exists for the enforcement of a right, the provision of a new remedy for the enforcement of the same right by a statute permissive in its terms does not abrogate the existing remedy. But if the statute changes the right, — if it gives a new and different right in place of the old one, and at the same time provides a new remedy, perfectly adapted to the complete enforcement of such new right, — the statutory remedy then becomes exclusive. What, then, is the effect upon the rights of the parties to a mortgage of the proviso at the end of section 4 of article XIII. of the constitution? Does it or does it not change the right of the mortgagor?

It is clear, in my opinion, that it does. Without it, a mortgagor paying his debt after assessment and before levy would, in case of the failure or refusal of the

mortgagee to pay the tax subsequently levied on his security, have the right to free his land of the lien by paying such tax himself, and could then recover the sum so paid in an action against the mortgagee. In other words, the measure of the reciprocal right and obligation of the parties would be the tax levy for the current year. But the proviso under consideration creates a different right, and necessarily a different obligation. It empowers the mortgagor to retain the amount of the mortgagee's assessment, computed according to the rate levied the previous year. This may be more or may be less than the actual levy for the current year. It will seldom be the same, and may sometimes be very considerably greater or less. Whatever it is, however, the mortgagor may retain it, and the mortgagee must submit to the deduction. Though both parties may have the best reason to believe that the rate of levy for the current year will not be half that of the previous year, the mortgagor may nevertheless retain an amount computed according to the old rate, and it is not pretended that the mortgagee can after the new levy recover the difference.

If this is so, — if the mortgagee must submit without redress to all the burdens of a rule enacted for the advantage of the mortgagor, — it would seem that he ought also to enjoy its benefit. The mortgagor, if he can always take according to the previous year's levy when he finds his advantage in so doing, ought not to be allowed to take according to the levy for the current year when that happens to be to his advantage. The rule, to be fair, ought to be invariable, and, in my opinion, it is. What the mortgagee must give, the mortgagor must take. It was never intended to establish two standards of compensation, to either of which the mortgagor may resort, as his interest may dictate. On the contrary, it is much more reasonable to hold that the constitution fixes one exact measure of the rights and obligations of the parties which is equally binding upon both.

If this conclusion is well founded, it follows that the mortgagor, paying his debt after assessment and be-

fore levy, cannot neglect to retain the taxes computed according to the levy of the previous year, and afterward maintain an action to recover the tax subsequently assessed and paid, — 1. Because such subsequently assessed tax is not the sum which he is entitled to receive; and 2. Because the constitution has given him an exclusive remedy for the enforcement of the right (to retain an amount computed according to the previous year's levy), which it has substituted for that which he would otherwise have had.

The reasons for this conclusion are greatly strengthened by its expediency. It is not only advantageous to the parties: it is emphatically the interest of the public to avoid and discourage unnecessary litigation. The mortgagor, having in his own hands the absolute power to protect himself, should not be allowed to deliberately disregard the constitutional provisions for his security, in order to vex the public tribunals with a gratuitous lawsuit. The mortgagor who purposely neglects to avail himself of the proviso under consideration is entitled to no more favor than one who has actually paid taxes on the mortgagee's interest before he pays his debt, and yet deliberately omits to deduct the amount so paid for the purpose of suing to recover it back. Each case in fact stands upon precisely the same footing. In each the mortgagor, at the time of paying his debt, knows that there is a certain fixed sum which he is entitled to deduct from the total amount secured, — a sum in no way dependent as to its amount upon future contingencies. Why should he be allowed in one case, any more than in the other, after making a purely voluntary payment of such sum, to maintain an action to recover it back?

It will be observed that I speak of a voluntary and deliberate payment, and I do so for the reason that such is the case before us. If the payment of the whole amount of the debt without deduction of the taxes had been induced by any fraud, or duress, or mistake, or if the deduction had been waived in consideration of a promise

by the appellant to pay the tax subsequently levied, the case would have been essentially different.

In the case of *Blythe* v. *Luning*, 7 Saw. 504, the mortgagor paid the whole debt under protest, and under what seems to have been regarded as a species of duress, the mortgagee refusing to satisfy the mortgage upon any other terms, and thereby preventing the mortgagor from making use of his property. The conduct of the mortgagee in that case may well have justified the decision, and I should myself be disposed to uphold an action based upon the same or analogous grounds. If the mortgagor is forced to pay by duress, if he pays in ignorance of his rights, or is induced by any fraud or promise to pay without making the deduction, I should say that he was entitled to recover, not the sum which he afterwards actually pays on account of the mortgagee's taxes, but the sum which he overpaid by the mistake, etc., or the sum which the mortgagee has agreed to pay in consideration of his forbearance. I cannot, however, bring myself to the view that the constitution gives a double right to the mortgagor, by which he is enabled to take out a sum computed according to the levy of the previous year if he so desires, or if it appears more profitable, waive his right of deduction for the chance of recovering a larger sum by action. The constitution was not designed to encourage that kind of speculation.

These views, if correct, are decisive of the present appeal. But it will throw some additional light upon the meaning of the constitution, to consider the effect of its provisions upon the rights and duties of an assignee of the mortgage who holds it at the time of payment by assignment made subsequent to the assessment. It is plain that in such case the assignment does not impair the right of the mortgagor to deduct the tax at the time of paying his debt, and the parties to the assignment necessarily treat with reference to the known right of the mortgagor and the corresponding liability of the holder of the mortgage. The assignee

will not pay, and the assignor cannot expect to receive, more than the amount of the debt, less the amount which the mortgagor has the right to deduct.  The necessary effect of the constitution therefore is, not only to compel the person who holds the mortgage at the time of payment to submit to a deduction of his accrued tax, but also to compel each successive owner of the security to pay such tax to his assignee at the time of the transfer. This being so, it would be a manifest injustice to compel him to pay it a second time, but this is precisely what the respondent is seeking to do, if the fact is such as in the absence of evidence to the contrary it must be presumed to be.  The appellant has already paid its tax to its assignee; the assignee necessarily assumed the duty of paying it to respondent, and respondent had the absolute right and power to compel it to pay.  Instead of standing on its right, it releases the assignee and seeks to compel the appellant to pay twice.  Thus, upon the theory that the mortgagor may, at his option, deduct the mortgagee's tax computed according to the levy of the previous year, or sue for the actual amount subsequently levied, a rule sufficiently unequal and unfair between the original parties to the mortgage is made to operate with still greater injustice between parties by assignment.

The only answer to this proposition is, that the assignor can protect himself by exacting a special agreement on the part of the assignee to refund the amount of the accrued tax in case the mortgagor shall not elect to deduct it at the time of payment.  It is true that he might protect himself in this way, but to hold that he must do so is to assume that the framers of the constitution intended to plant in every assignment of a mortgage the seeds of future litigation.  In the face of a provision evidently designed to secure absolutely the rights of the parties without litigation, it ought not to be held that a part of the scheme was to make a transaction so usual, so legitimate, and often so necessary, as

the assignment of a mortgage impossible, except upon conditions involving a new subject of contention.

A great part of the argument of the respondent to sustain his claim against the assignor of the mortgage is devoted to the proposition that the tax levied upon the mortgagee's interest becomes and remains a personal liability to the state. The question whether a tax is a debt or personal liability of the person assessed depends altogether upon the statutory provisions for the time being, but the question here is, not as to the construction of our revenue laws, but is wholly as to the meaning of a clause of the constitution.

It is plain that the constitution compels the holder of the mortgage to pay the accrued tax, or what is treated as its equivalent, to the mortgagor at the time the mortgage debt is paid. He is at the same time compelled to satisfy and discharge the mortgage. Can it be supposed that the framers of the constitution, while making it compulsory upon him to pay his tax to the mortgagor and surrender his security, intended, still, to hold him personally liable to the state for the same tax? Such a conclusion is little short of absurd, and it seems equally so to suppose that such personal liability was intended to be contingent upon the choice of the mortgagor to deduct or not to deduct the accrued tax at the time of paying his debt. On the contrary, it seems to me clear, that as to this particular tax at least, the constitution intends that the state shall rely for its enforcement upon its lien on the mortgaged premises,—a security which is more than sufficient in every case.

Upon this view of the constitution, the rights of all parties, including the state, are amply secured without the necessity of any legal proceedings. Upon the opposite view,—the view that the mortgagor has an option as to the amount he shall take, and the time when and person from whom he shall take it,—all is uncertainty and confusion. There should be no hesitation in adopting the view which leads to certainty, security, and

substantial justice, in preference to that which involves uncertainty, insecurity, and inevitable injustice.

My conclusion is, that if a mortgagor intentionally and deliberately omits to deduct the tax accrued upon the mortgagee's interest at the time of payment, he cannot afterwards maintain an action to recover it. If he pays his debt without deduction of the tax by mistake, or fraud, or under duress, he may have an action to recover back the over-payment, but in such case his right of action is against the party to whom the over-payment was made, in this case the State Loan and Trust Company.

The judgment and order of the superior court should be reversed.

PATERSON, J., concurred in the dissenting opinion of Chief Justice Beatty.

The following is the opinion of Commissioner Vanclief, adopted by the court at the former hearing in Bank, on the 31st of March, 1892:—

VANCLIEF, C.—The plaintiff, having paid the taxes, amounting to $185.12, assessed to the defendant on its mortgage interest in land, brought this action in a justice's court to recover the sum so paid from the defendant. The cause was properly transferred to the superior court for trial, and judgment passed for plaintiff. The defendant appeals from the judgment, and from an order denying its motion for a new trial. The material facts found by the court and stipulated by the parties are as follows: One Sanborn, being the owner of 240 acres of land, situate in Los Angeles County, mortgaged the same, on the fourteenth day of March, 1887, to Hall and Stilson, to secure the payment of twenty thousand dollars, and the mortgage was duly recorded. On May 7, 1888, Hall and Stilson assigned the mortgage and debt thereby secured to the defendant, and defendant continued to own them until June 7, 1889, when it assigned them to the State Loan and Trust Company, a corporation. Be-

fore the taxes were assessed upon the land or mortgage for the year 1889, the plaintiff became the owner of the land subject to the mortgage, and divided it into blocks and lots. While the defendant was the owner of the mortgage, to wit, on March 4, 1889, the taxes in question were assessed to defendant on its mortgage interest. On July 24, 1889, the plaintiff, as successor in interest of the mortgagor, paid the mortgage debt in full to the State Loan and Trust Company, without any deduction or provision on account of the taxes on the mortgage interest assessed to defendant. On December 19, 1889, the tax collector demanded the taxes ($185.12) of the defendant by sending it a bill for the amount. On the following day, the defendant inclosed the bill in a letter to the plaintiff, stating that it (defendant) had no interest in the mortgaged premises. Thereupon the plaintiff requested the defendant to pay the taxes assessed to it, but defendant refused, and failed to pay the same, or any part thereof. On December 30, 1889, the plaintiff, to prevent the taxes from becoming delinquent, and to remove the lien thereof from its land, paid them.

1. The validity of the tax is questioned upon the ground that the description of the mortgaged land varies essentially from that contained in the mortgage. The mortgage describes it as "the northwest quarter and the west half of the northeast quarter of section thirteen (13), township one (1) south, of range twelve (12) west, of the San Bernardino meridian, containing two hundred and forty (240) acres." As the land had been divided by plaintiff into blocks and town lots before the assessment of the taxes for 1889, it is so described in the assessment-book. It is agreed, however, that the blocks and lots assessed to the defendant constitute the identical land described in the mortgage, and no more, and that the assessment was in substantial conformity with the requirements of section 3651 of the Political Code, and in proper form for the assessment of a mortgage interest in town lots. As the taxes were paid be-

fore they became delinquent, they were not increased
by costs of advertisement or sale in lots. I think the
assessment described the mortgaged land in accordance
with the statute, and with such particularity and cer-
tainty as to afford the defendant the means of identifi-
cation, and so as not to mislead him. This was sufficient·
(Cooley on Taxation, 282–286.)

2. It is claimed that respondent's exclusive remedy
was to deduct the amount of the taxes from the mort-
gage at the time of payment, on the basis of the levy of
the preceding year, in pursuance of section 3627 of the
Political Code. But the statute giving that privilege is
permissive, and not mandatory, in its terms. It has
been expressly decided by the circuit court of the
United States for the district of California that, under
section 4, article XIII., of the constitution of California
of 1879, it is the duty of the mortgagee, and not of the
mortgagor, to pay the taxes levied on the mortgage inter-
est; that the constitution and statute give the mortgagor
the right to pay the tax, and deduct it from the debt, but
that he is not bound to do so; and that if the mortgagee
dispute the tax, and decline to allow it, and the whole
mortgage debt is paid by the mortgagor without deduc-
tion of the tax, the mortgagor, if afterwards compelled
to pay it to relieve his property of the lien, may recover
the amount paid from the mortgagee, whose debt it is.
(*Blythe* v. *Luning*, 7 Saw. 506, 507.) The principle of
this decision is in accordance with the well-settled rule,
that "where the plaintiff, either by compulsion of law,
or to relieve himself from liability, or to save himself
from damage, has paid money, not officiously, which
the defendant ought to have paid, a count in *assumpsit*
for money paid will be supported." (*Bailey* v. *Bussing*,
28 Conn. 462; *Exall* v. *Partridge*, 8 Term Rep. 310.) In
such case, "the law implies a request on the defendant's
part, and a promise to repay, and the plaintiff has the
same right of action as if he had paid the money at the
defendant's express request." (*Nichols* v. *Bucknam*, 117
Mass. 491; *Nutter* v. *Seydenstricker*, 11 W. Va. 535.) The

right of contribution or reimbursement for money necessarily paid for another's benefit does not necessarily depend upon contract, but may arise from the equity of the case. (Freeman on Cotenancy, sec. 322. See also *Hay* v. *Hill*, 65 Cal. 383.)

3. It is also insisted that there is no proof of the validity of the "road tax" or of the "special school tax" which were included in the sum sued for. Each of these is required to be levied by the supervisors and to appear upon the assessment-book (Pol. Code, secs. 1837, 2654); and the assessment-book itself is *prima facie* evidence, not only of the assessment and of the amount of the unpaid taxes, but also of the fact that all the forms of law in relation to the assessment and levy have been complied with. (Pol. Code, sec. 3789; *Modoc Co.* v. *Churchill*, 75 Cal. 172.) The assessment-book in due form was in evidence, and there was no evidence tending to overcome the *prima facie* case proved by it.

4. It is further claimed that the liability of the defendant to pay the tax was discharged by his assignment of the mortgage before the levy of the tax. But the law required the mortgage to be assessed to the person who owned it on the first Monday of March (Pol. Code, secs. 3627, 3628); and such person could not escape the obligation to pay the tax by mere assignment of the mortgage. The personal obligation to pay taxes does not depend upon the continued ownership of the property assessed until after the levy of the tax, or until the time for payment arrives. I think the judgment and order should be affirmed.

Belcher, C., and Fitzgerald, C., concurred.

The following is the dissenting opinion of Mr. Justice Harrison, rendered on the former hearing: —

Harrison, J., dissenting.— 1. Although the interest in the land represented by the mortgage was assessed as of the first Monday of March, 1889, and the tax which was afterwards levied upon that interest became by relation

a lien upon the land as of that date, yet until the tax was levied there was no liability or obligation for its payment created against either the property or its owner. This tax was levied on the first Monday in October of that year (Pol. Code, sec. 3714), but prior to that date the plaintiff had paid the mortgage debt and caused the mortgage to be canceled. The constitution (art. XIII., sec. 4), and the statute passed in pursuance thereof (Pol. Code, sec. 3627), authorizing the assessment of a tax upon the mortgage, provide that "if the owner of the property shall pay the tax so levied on such security, it shall constitute a payment thereon, and, to the extent of such payment, a full discharge thereof; provided, that if any such security or indebtedness shall be paid by any such debtor or debtors, after assessment and before the tax levy, the amount of such levy may likewise be retained by such debtor or debtors, and shall be computed according to the tax levy for the preceding year." There is no provision in the constitution or statute which gives to the mortgagor the right to be reimbursed for this payment in any other mode; and under the familiar rule that when the right and the remedy are purely statutory, the remedy provided by the statute is the only mode of preserving the right, if the plaintiff would insist upon this right he should have deducted the amount of the tax from the debt at the time that he paid the debt. In the absence of the constitutional provision, there would be no obligation upon the mortgagee, as between him and the owner of the land, to pay the tax upon the mortgage, and the owner of the land would not be able to compel such payment by him. The obligation created by such tax exists only in favor of the state, and the tax is a charge upon the property against which it is assessed, and not a personal obligation against the mortgagor. With the exception of poll-taxes, taxes are always levied upon property, and not against individuals, and the mortgage tax is a tax upon the security, and not against the mortgagee. The mortgage is made by the constitution "an interest in the property affected

thereby," and the entire tax against the property is divided between the mortgagee and the owner. The provision that the value of the security shall be assessed and taxed to the "owner thereof" creates no different obligation upon the mortgagee from that which is created upon the owner of the property by the provision requiring the value of the property to be taxed to the "owner of the property." The tax is not a debt, and there is no personal obligation created by it. It is a burden imposed by the state upon property within its limits; but that burden is a charge against the property, and not against the individuals who own the property, and follows the property through all changes in its ownership, and is eventually paid by the individual who is the owner when the tax is collected. "A debt is a sum of money due by contract, express or implied. A tax is a charge upon persons or property to raise money for public purposes. It is not founded upon contract; it does not establish the relation of debtor and creditor between the tax-payer and state; it does not draw interest; it is not the subject of attachment; and it is not liable to set off. It owes its existence to the action of the legislative power, and does not depend for its validity or enforcement upon the individual assent of the tax-payer. It operates *in invitum.*" (*Perry* v. *Washburn,* 20 Cal. 350.) Nor is its character affected by the fact that the statute authorizes a personal action to be brought for its recovery. Such procedure is merely the statutory method prescribed for its collection, and does not create a debt or personal obligation against the individual to whom it is assessed. (*Meriwether* v. *Garrett,* 102 U. S. 514.) In the absence of statutory authority, an action for the recovery of a tax cannot be maintained (*City of Camden* v. *Allen,* 26 N. J. L. 398; *Commissioners* v. *Bank of Stafford,* 48 Kan. 561); whereas, if the tax was a debt or personal obligation, its collection could be enforced by suit without statutory authority. (See also *City of Augusta* v. *North,* 57 Me. 392; *Shaw* v. *Peckett,* 26 Vt. 482; *Peirce* v. *City of Boston,* 3 Met. 520.)

2. The taxes levied against the property are divided between the mortgagee and the owner, and become a lien upon both the land and the security as of the first Monday in March, and remain a lien thereon until paid. If the owner of the land parts with the property during that period, he is exonerated from any liability to the state for the payment of this tax, and the individual who is the owner of the land when the tax becomes payable must discharge the lien, if he would save it from sale by the collector. The purchaser may protect himself against this lien by proper covenants in the deed from his grantor, as he would against any other lien or encumbrance; but if his conveyance is a naked quitclaim, he cannot call upon his vendor for remuneration for the amount of the tax so paid, any more than for the payment of any other encumbrance which was not a personal obligation against the vendor. The tax against the mortgage is in all respects identical in character with the tax against the land. It is levied and assessed in the same manner and at the same time, is a lien upon the same property, and collected by the same means. The same results, therefore, must follow the transfer of the security as follow the transfer of the land. The vendor is thereby absolved from all obligations for the tax previously levied thereon, and when the tax is payable, it must be paid by the individual who is at the time the owner of the security. By the transfer, all relations between the mortgagee and the owner of the land terminate, and the assignee of the mortgage is substituted in the place of the mortgagee, with all the rights and obligations previously resting upon the mortgagee. The provision in the constitution that "the taxes so levied may be paid by either party to such security" refers to this assignee, and not to the original mortgagee. It is only the "owner" of the security that is permitted to pay the tax levied upon the property, and have the amount so paid become a part of the debt secured, but if the original mortgagee to whom the mortgage has been assessed has assigned the mortgage,

he is not the " owner " of the security, or of any debt to be increased by the payment of such tax, and consequently is not the " party " to the security referred to in the above provision of the constitution. For the same reasons the provision in the constitution that a payment by the owner of the property of the tax levied on the security shall constitute a payment thereon, and to the extent of such payment a full discharge thereof, is applicable only to the holder of the mortgage in case of an assignment, and not to the original mortgagee. Consequently, if such payment be made by the owner of the property after assessment and before the tax levy, his right to reimbursement can be enforced only against the holder of the mortgage, and not against the original mortgagee, and only in the mode pointed out in the constitution.

3. If it can be maintained that by virtue of his relations to the land there was an implied obligation upon the mortgagee to discharge the lien thereon created by the tax upon his security, that obligation, by the transfer of the security, became only a secondary obligation upon him. The primary obligation for the tax is upon the security itself, and the owner of that security is the individual to whom the owner of the land must look primarily for the discharge of the lien. The constitution refers to him alone, and the provision that if the debtor pays the indebtedness " after assessment and before the tax levy," the amount of the tax may be " retained " by him, implies that he must " retain " it from the holder of the security, or lose the right to proceed against any other person for reimbursement. The owner of the land, having in his custody this fund — the mortgage debt — out of which to discharge the lien of the tax, must, in equity, apply it to that purpose, or lose any right he may have to resort to other securities. The most favorable position which the owner can claim that the original mortgagee holds towards him in reference to this mortgage tax is, that he is under some obligation to ultimately discharge this lien, but this is only the position of a surety, and as a surety he is entitled to have

this fund applied to the payment of the tax, or be discharged therefrom.   (Civ. Code, secs. 2840, 2849.)   The payment by the plaintiff of the mortgage debt without making any deduction for the mortgage tax was a voluntary surrender by him of a security which he held for the purpose of protecting himself and his property against the burden of the tax, and such payment must be regarded as a release by him of any liability which he would claim against the defendant.   In *Blythe* v. *Luning*, 7 Saw. 506, the mortgagor sought to avail himself of the very remedy pointed out by the constitution, by deducting the estimated amount of the mortgage tax, but the mortgagee refused to cancel the mortgage, except upon payment of the full amount of the mortgage debt. In that case the mortgagor and mortgagee were the respective owners of the land and of the security at the time of the assessment as well as at the time of the payment, and there was no question presented involving the right or liability of any other person than the mortgagor and mortgagee, and the court held that the payment of the tax by the mortgagor, under the circumstances of that case, was made under duress, and could be recovered in an action therefor.   In my opinion, the judgment and order should be reversed.