[S. F. No. 3387. In Bank.—October 1, 1904.]

## J. H. HENRY, Appellant, v. GARDEN CITY BANK AND TRUST COMPANY OF SAN JOSE, Respondent.

MORTGAGES—FORECLOSURE—TAX ON SECOND MORTGAGE—SALE TO STATE —REDEMPTION—PERSONAL LIABILITY.—One who · has foreclosed a prior mortgage, making a second mortgagee a party, and becomes purchaser under the sale, is not a party to the security of the second mortgage within the meaning of section 4 of article XIII of the constitution and section 3627 of the Political Code; and where such purchaser redeemed the land from sale under taxes levied upon the second mortgage he cannot recover the amount so paid from the second mortgagee, who was not personally liable for such taxes not bound to refund the amount so paid to such purchaser, with whom he had no contractual relation.

APPEAL from a judgment of the Superior Court of Santa Clara County. W. G. Lorigan, Judge.

The facts are stated in the opinion of the court.

Jackson Hatch, for Appellant.

S. F. Leib, for Respondent.

VAN DYKE, J.—The court below sustained the demurrer to the second amended complaint, and, the plaintiff declining to further amend, judgment was entered accordingly, and in favor of the defendant, from which this appeal is taken. The complaint consists of two counts. In the first it is alleged that one Murphy, being the owner of a certain tract of land situate in the county of San Luis Obispo, executed a mortgage to the plaintiff October 1, 1895, to secure the sum of thirty thousand dollars, with interest; that subsequently— to wit, February 16, 1897—said Murphy executed a second mortgage to the defendant to secure the sum of $16,670; that on May 9, 1898, plaintiff brought an action to foreclose his said mortgage, making the defendant herein a party defendant in said action; that said defendant made default, and plaintiff, August 11, 1898, had the usual decree of foreclosure; that on September 5, 1898, said property was sold under said decree of foreclosure, and plaintiff became the purchaser for the

amount specified in the judgment and decree, and there being no redemption a deed was duly executed and delivered to the plaintiff by the sheriff on said sale April 15, 1899, and ever since said sale the plaintiff has been, and now is, the owner of said land; that on the first Monday of March, 1898, the debt, amounting to $16,670, due defendant, and so secured by said mortgage executed by said Murphy, was assessed by the assessor of said county against the defendant corporation for the purpose of state and county taxes and for special school tax; that said defendant neglected and refused to pay said tax, and that such proceedings were thereafter had by the proper officers of said San Luis Obispo County, because of such failure and refusal to pay said tax, amounting with interest and penalties to the sum of $405.77; that the lands covered by the said mortgage were duly and regularly sold to the state of California and purchased by said state; that thereafter—to wit, on March 5, 1900—the plaintiff, in order to remove the lien and encumbrance resulting from such sale, was obliged to pay, and did pay, the sum of $406.30 to effect a redemption of said lands from the sale to the state. The second count is the same as the first, except that it relates to the taxes of 1899, which defendant failed to pay, and which became delinquent, and which the plaintiff paid before any sale thereof to the state.

Among other grounds stated in the demurrer was that the complaint failed to state a cause of action, and we think it was properly sustained on that ground. The appellant bases his claim for a recovery of the amount paid by him to remove the encumbrance and lien on the property he purchased upon the provision of the constitution, carried into the Political Code (Const., art. XIII, sec. 4; Pol. Code, 3627). The provision in the constitution reads: ''A mortgage, deed of trust, contract, or other obligation by which a debt is secured, shall, for the purposes of assessment and taxation, be deemed and treated as an interest in the property affected thereby. Except as to railroad and other quasi-public corporations, in case of debts so secured, the value of the property affected by such mortgage, deed of trust, contract, or obligation, less the value of such security, shall be assessed and taxed to the owner of the property, and the value of such security shall be assessed and taxed to the owner thereof, in the county,

city, or district in which the property affected thereby is situate. The taxes so levied shall be a lien upon the property and security, and may be paid by either party to such security; if paid by the owner of the security, the tax so levied upon the property affected thereby shall become a part of the debt so secured; if the owner of the property shall pay the tax so levied on such security, it shall constitute a payment thereon, and to the extent of such payment, a full discharge thereof; provided, that if any such security or indebtedness shall be paid by any such debtor or debtors, after assessment and before the tax levy, the amount of such levy may likewise be retained by such debtor or debtors, and shall be computed according to the tax levy for the preceding year."

The constitution, it will be seen, says: "The taxes so levied shall be a lien upon the property and security, and may be paid by either party to such security." Here, however, the plaintiff was not a party to the security in question. After becoming the owner of the property, he redeemed from the state, and paid the taxes assessed upon the land, as stated, for the purpose of relieving his property from this cloud upon his title. The defendant, however, derived no benefit therefrom, and is under no obligation to refund the amount so paid. The question here presented has, however, been directly decided by this court adversely to the contention of the appellant in *Canadian Co. v. Boas,* 136 Cal. 419. The appellant concedes this to be so, but contends that the principles involved in that case do not appear to have been thoroughly considered by the court, and that they are in conflict with the decision in *San Gabriel etc. Co. v. Witmer etc. Co.,* 96 Cal. 623, and that the importance of the question involved calls for a re-examination before being the basis of subsequent decisions. The opinion in *San Gabriel etc. Co. v. Witmer etc. Co.,* relied upon by appellant, was by a divided court of four to three, and was followed in *Angus v. Plum,* 121 Cal. 608, and, as stated in the court's opinion, "whether that decision was right or wrong," upon the ground that the parties to the controversy in the latter case had acted upon the rule laid down in the former. In *McPike v. Heaton,* 131 Cal. 109,[1] the defendant was the owner of the undivided half of certain land on the first Monday of March, 1897, and had been such owner

[1] 82 Am. St. Rep. 335.

for some time, and on the 24th of March conveyed his interest to one Jackson, who on the next day conveyed it to the plaintiff by a grant-deed. The land was assessed to defendant Heaton for the fiscal year commencing July 1, 1897, and taxes were levied on the land for that year, and on November 29, 1897, plaintiff, for the purpose of removing the lien of these taxes, paid the same to the proper officers, and brought the action under consideration to recover from the defendant the amount thus paid. Plaintiff had judgment in the lower court, which was reversed here. In the opinion of this court it is said: "The plaintiff had no contractual relation with the defendant, and his covenant with Jackson did not pass to them. They could have protected themselves against these taxes either by assuming their payment as part of the consideration for the purchase or by suitable covenants with Jackson, but they have no right of action therefor against the defendant. *San Gabriel etc. Co.* v. *Witmer etc. Co.,* 96 Cal. 623, cited by the respondents, involved a consideration of the relative obligations between a mortgagee and the owner of the land mortgaged, by reason of the peculiar provisions of the constitution in reference to the assessment and payment of taxes upon these respective interests in the land, and was determined upon the ground that by virtue of these provisions there is a personal obligation upon the mortgagee in favor of the mortgagor for the payment of the taxes assessed upon the mortgage, and that if these taxes are paid by the owner of the land he may reimburse himself therefor, either by deducting the amount from the mortgage debt or in a separate action therefor. There is, however, no personal obligation upon the owner of land for the taxes levied against it, and the payment of such taxes can be enforced only by a sale of the land in the mode prescribed by the statute. The defendant was under no personal liability for the taxes paid by the plaintiffs, and the case cited is not applicable to the present case." The opinion in that case was signed by one of the justices composing the majority of four in *San Gabriel etc. Co.* v. *Witmer etc. Co.,* 96 Cal. 623. The opinion in *Canadian Co.* v. *Boas,* 136 Cal. 419, was written by another of the justices who concurred in *San Gabriel etc. Co.* v. *Witmer etc. Co.* This last case, as already stated, is on all fours with the one at bar. After stating the facts, the court says: "We

see no ground upon which the action could be maintained. There was no contractual relation whatever between appellant and respondent with respect to the money sued for. . . . The judgment and lien created by the tax on respondent's second mortgage interest had been satisfied and removed by the sale to the state. (Pol. Code, sec. 3716.) The money paid by the appellant to the state was not for the benefit of the respondent, whose entire interest in the property had been first taken by the state for taxes, and afterwards had again been entirely swept away by the judgment of foreclosure. The appellant is in no different position from that of any other purchaser of land who finds his title clouded." This case contains a clear interpretation of the constitutional provision under consideration, and we are not at all inclined to either overrule or modify it, and this disposes of the case now before us.

The judgment appealed from is affirmed.

McFarland, J., Henshaw, J., Angellotti, J., concurred.

SHAW, J., dissenting.—I dissent. The facts briefly stated are, that plaintiff held a senior mortgage on lands on which the defendant held a junior mortgage; that the land was valued for taxation high enough to cover the mortgage interest of both mortgagees for the years 1898 and 1899; that in May, 1898, the plaintiff began suit to foreclose his mortgage, and in due course of proceedings purchased the land at foreclosure sale, and obtained a sheriff's deed on April 15, 1899; that in the mean time the taxes assessed on the mortgage interest of the defendant in the land for 1898 and 1899 had not been paid, and the plaintiff, in order to prevent the sale of his land therefor and protect his property, was compelled to pay the tax for 1899 after it became delinquent, and to redeem a sale to the state for the defendant's taxes for 1898. The action was to recover of the defendant the sums thus paid for taxes. Under the provisions of the constitution and section 3627 of the Political Code the mortgage interest of the mortgagee in lands is to be considered as an estate therein the same as any other interest in property.

The principle upon which the action was based is as old as the common law. It is stated and approved as follows in *San Gabriel etc. Co.* v. *Witmer etc. Co.*, 96 Cal. 635: "Where the

plaintiff, either by compulsion of law, or to relieve himself
from liability, or to save himself from damage, has paid
money, not officiously, which the defendant ought to have paid,
a count in *assumpsit* for money paid will be supported.''
''In such case the law implies a request on the defendant's
part, and a promise to repay, and the plaintiff has the same
right of action as if he had paid the money at the defendant's
express request. The right of contribution or reimbursement
for money necessarily paid for another's benefit does not
necessarily depend upon contract, but may arise from the
equity of the case.'' In equity the same principle is the
foundation of the doctrine of subrogation. ''The general
rule is, that any person having an interest in property on
which there is a lien or encumbrance, may, if necessary for
his own protection, pay off the same and be substituted to
the rights and remedies of the holder thereof.'' (27 Am. &
Eng. Ency. of Law, 2d ed., p. 235.)

The principle is so well established that it seems useless to
cite authorities, but the following examples may elucidate
the proposition. *Hogg* v. *Longstreth,* 97 Pa. St. 255, is sub-
stantially the same as the case at bar. The plaintiff, a mort-
gagee, had purchased the land at the foreclosure sale, and
afterwards, in order to protect his land from sale for taxes,
was compelled to pay certain taxes assessed against the land
while it was held by a purchaser from the mortgagor. It was
held he could recover in *assumpsit* from the grantee of the
mortgagor the amount of the taxes thus paid. In *Graham* v.
*Dunnigan,* 6 Duer, 629, it was held that a tenant for life of
a part, having been compelled to pay the taxes against the
whole property, can recover of the other owners their proper
proportion of the taxes thus paid. There was, of course, no
contractual relation between the tenants with respect to these
taxes, and it was further decided that such relation is not
necessary to support the action. In *Goodnow* v. *Moulton,*
51 Iowa, 557-558, the plaintiff, in the belief that he owned
the land, had paid the taxes thereon during litigation with
the real owner as to the title. The real owner had not paid
the tax, nor had he caused it to be assessed in his name. There
were no contractual relations between the parties. It was held
that the plaintiff could recover of the real owner the taxes thus
paid. Where, by operation of law, A is compelled to pay a

debt, which in equity and good conscience B should have kept from being claimed, A may recover of B the amount so paid. (*Ticonic Bank* v. *Smiley*, 27 Me. 225.[1]) The following authorities are to the same effect: *Nutter* v. *Sydenstricker*, 11 W. Va. 535; *Bailey* v. *Bussing*, 28 Conn. 455; *Nichols* v. *Buchnam*, 117 Mass. 488; *Kemp* v. *Cossart*, 47 Ark. 62; *Blythe* v. *Luning*, 7 Saw. 506; 14 Fed. 281; *Taylor* v. *Porter*, 7 Mass. 355, (in which there was a mortgage on two parcels sold to different persons, one of whom paid all and recovered half of the other;) 2 Greenleaf on Evidence, sec. 114; 35 Century Digest, cols. 44, 48. This principle was applied in *San Gabriel etc. Co.* v. *Witmer etc. Co.*, 96 Cal. 635, and that case was followed in *Angus* v. *Plum*, 121 Cal. 608.

I can see no point lacking in the facts of this case that would be necessary to bring it within the rule of the foregoing authorities. 1. The plaintiff was compelled to pay the taxes in order to protect his own property. 2. The taxes were the personal obligations of the defendant. "Every tax has the effect of a judgment against the person." (Pol. Code, sec. 3716.) In *People* v. *Seymour*, 16 Cal. 343,[2] it was expressly decided that a tax is a debt, and that when a tax is duly assessed the owner of the property becomes personally liable, and may be sued therefor in all cases when there is a statute authorizing such suit. To the same effect is *Oakland* v. *Whipple*, 39 Cal. 115. There is a statute authorizing such suit. The statutes of 1880 (p. 136) provide that any county, or city and county, "may sue in its own name for the recovery of delinquent taxes, whether the same be for county, or city and county, and state purposes, or either of them." In *Los Angeles County* v. *Ballerino*, 99 Cal. 595, this statute was said to be still in force, and it was held that under its provisions a county could sue a taxpayer to recover the taxes delinquent. 3. Being debts, or at least personal obligations, of the defendant, it follows that he ought to have paid them, and that under the act of 1880 he was liable to a suit by the county to recover them, and hence the payment by the plaintiff, in a legal sense, inured to the benefit of the defendant. It was the duty of the defendant to pay the tax on his property, and this duty was performed by the plaintiff under

[1] 46 Am. Dec. 593.          [2] 76 Am. Dec. 521, and note.

compulsion. The fact that with respect to the taxes of 1898 there had been a sale to the state before the plaintiff made payment is not material. The right of the plaintiff to be subrogated to the rights of the state includes the right to be subrogated to all the remedies which the state originally had against the taxpayer. 4. Moreover, it cannot be said from the facts of this case that the second mortgagee suffers any hardship by being compelled to pay the taxes in question. The presumptions of law are in favor of the plaintiff. The mortgage debtor is presumed to be solvent, and there was nothing in the record here to show the contrary. Therefore, the valuable element of the property upon which the taxes were assessed—namely, the debt due from the mortgagor to the second mortgagee—is presumed to be, even at the present time, worth the amount thereof, owing to the solvency of the debtor. Under the ruling of the majority, the second mortgagee will secure the payment of his taxes by another, without any liability on his part to repay them.

The opinions in *McPike* v. *Heaton,* 131 Cal. 109,[1] and *Canadian Co.* v. *Boas,* 136 Cal. 420, are clearly inconsistent with the above principles, and also with *Angus* v. *Plum* and the Witmer case, and both of these cases proceed on erroneous lines. *McPike* v. *Heaton* rests on two propositions: 1. That McPike was the second grantee, and that there was no covenant running to him from the person against whom the taxes were assessed, or, in other words, that there was no contractual relations between the plaintiff and defendant; and 2. That as "there is no personal obligation upon the owner of land for the taxes levied against it, . . . the defendant was under no personal liability for the taxes paid by the parties," and hence it was said *San Gabriel etc. Co.* v. *Witmer etc. Co.,* 96 Cal. 635, did not apply. In the Boas case the same propositions were made as the foundation for the decision, and it was put on the ground that the money paid by the plaintiff was not for the benefit of the defendant, because of this absence of personal liability. The answer to both of these points is clear from the foregoing authorities. There was a personal liability, and the tax paid by the plaintiff was necessary to remove a burden upon the plaintiff's land, arising from the neglect of the defendant .to discharge his obligation to the

---

[1] 82 Am. St. Rep. 335.

state. The payment discharged his obligation and operated directly to his benefit.

If the defendant should show in his defense that the mortgagor was insolvent, that he had no other security, and, consequently, that his whole estate in the premises and right to the debt had been swept away and destroyed by the foreclosure of the first mortgage, and substantially merged therein, I think the same principles of justice and equity upon which the plaintiff depends would then be operative in aid of the defendant, and would require judgment in his favor. But he should be required to show this, and not have it presumed in his favor.