[S. F. No. 4842.   In Bank.—May 20, 1908.]

## WILLIAM EDE COMPANY, Appellant, v. WILLIAM B. HEYWOOD et al., Respondents.

TAX ON MORTGAGE INTEREST—PAYMENT OF TAX BY GRANTOR OF MORT-GAGOR—LIABILITY OF MORTGAGEE.—A purchaser of real property, which was subject to a lien for unpaid taxes assessed on the interest of a mortgagee thereof under a mortgage executed by his grantor, who subsequently pays the tax for the purpose of releasing the land from the lien, cannot recover the amount so paid from such mortgagee, as there was no contractual relation existing between them. Even if the rule were otherwise, it could not operate to impose a liability on the original mortgagee who had assigned the mortgage upon which the tax was assessed prior to the date on which the tax became a lien.

APPEAL from a judgment of the Superior Court of the City and County of San Francisco. J. M. Seawell, Judge.

The facts are stated in the opinion of the court.

J. C. Bates, for Appellant.

Powell & Dow, for Respondents.

ANGELLOTTI, J.—Plaintiff appeals upon the judgment-roll alone from the judgment in favor of the defendants.

The action is to recover money alleged to have been paid by the plaintiff to the use of the defendants. The facts are as follows: On the first Monday of March, 1905, the defendant William B. Heywood was the owner and holder of a duly recorded mortgage on certain land in San Francisco, and on that date the taxes for that year on his interest as such mortgagee became a lien on the said interest (Pol. Code, sec. 3718). This interest for purposes of taxation is an interest in the land (Const., art. XIII, sec. 4; Pol. Code, sec. 3627). On April 19, 1905, this mortgage was fully paid and satisfaction thereof entered of record. On June 1, 1905, the land was conveyed by Louis Friedlander and Jennie Friedlander, his wife, and F. K. Houston and Mary F. Houston, his wife, the owners thereof, by their grant, bargain, and sale deed, to plaintiff. The aforesaid taxes on the mortgage interest were

duly assessed and levied. On November 1, 1905, plaintiff gave notice to said defendant that said taxes remained unpaid, and demanded that said defendant pay the same, which he then and ever since has refused to do. On November 27, 1905, being the last day for payment before delinquency, plaintiff paid the taxes. Said defendant, although requested so to do, has ever since refused to pay to plaintiff the amount so paid.

Upon these facts, the trial court concluded that plaintiff was not entitled to recover, and gave judgment for defendants.

The case before us is simply that of one who has purchased real property with the title burdened by an encumbrance done, made, or suffered by the grantor, or some one claiming under him, seeking to recover the sum that he has paid to discharge such encumbrance, not from his grantor or his heirs, but from a third person with whom he has not and never had any contractual relation whatever. This was exactly the case of *McPike* v. *Heaton*, 131 Cal. 109, [82 Am. St. Rep. 335, 63 Pac. 179], where the plaintiffs had purchased land subject to a tax-lien, which should have been paid by the defendant to whom the property was assessed, but who was not plaintiffs' immediate grantor and bore no contractual relation to them. It was held that the covenant against encumbrances done, made, or suffered by the grantor or any person claiming under him, implied from the use of the word "grant" in the conveyance made by plaintiffs' grantor (Civ. Code, sec. 1113), which included taxes (Civ. Code, sec. 1114), did not run with the land, or pass to the assignee, *and that as plaintiffs had no contractual relation with defendant, no recovery against him could be had.* That without some contractual relation, there could be no obligation on the defendant so far as the plaintiffs were concerned. It was said: "They could have protected themselves against these taxes either by assuming their payment as a part of the consideration for the purchase, or by suitable covenants with Jackson" (their grantor), "but they have no right of action therefor against the defendants." In *Canadian etc. Co.* v. *Boas*, 136 Cal. 419, [69 Pac. 18], it was held that a mortgagee who had obtained title to the property by foreclosure proceedings, could not recover of a junior mortgagee whose interest in the property had been extinguished by the fore-

closure proceedings, the amount paid by it in redeeming the property from a sale to the state for taxes assessed against such junior mortgagee on such junior mortgage. This decision was based on the proposition that there was no contractual relation whatever between the plaintiff and defendant with respect to the moneys sued for, and it was said that the plaintiff was in no different position from that of any other purchaser of land who finds his title clouded. The case of *Henry* v. *Garden City Bank etc.*, 145 Cal. 54, [78 Pac. 228], was substantially the same in facts and in result. (See, also, *Bock* v. *Gallagher*, 114 Mass. 28.) All of these cases proceed upon the theory that one who buys property from another takes it just as it is, regardless of the nature of the title, or the number or character of liens resting upon it, except in so far as he is protected by contract. Independent of contract, neither his immediate grantor nor any other person is under any obligation to make perfect the title for him, or discharge any encumbrance or lien on the property. By reason of section 1113 of the Civil Code, certain covenants on the part of the grantor for himself and his heirs are implied from the use of the word "grant" in any conveyance by which an estate of inheritance or fee simple is to be passed, unless otherwise expressly provided in the conveyance, and the right of the grantee to reimbursement from the grantor and his heirs for money necessarily paid by him to discharge encumbrances so covenanted against, thus rests on the terms of his contract. It is impossible to distinguish these cases from the case at bar, and under the doctrine declared thereby, the conclusion of the learned judge of the trial court was correct. Appellant relies strongly upon the case of *San Gabriel Co.* v. *Witmer Company*, 96 Cal. 623, [29 Pac. 500, 31 Pac. 588]. There can be no doubt that its contention finds support in the conclusion reached in that case, but that case, decided by a bare majority of this court, and the case of *Angus* v. *Plum*, 121 Cal. 608, [54 Pac. 97], decided upon the authority of the former case, have been practically overruled by the later decisions already cited, so far as the same might be held applicable under the circumstances appearing in this case.

As to the defendant William H. Heywood, the judgment would be right, even if the contention of appellant as to the

law applicable were to be upheld. He was the original mortgagee, and the record shows that on April 24, 1904, he duly assigned and transferred the mortgage upon which the tax was assessed to the defendant William B. Heywood. As he was not the owner of the mortgage interest on the first Monday of March, 1905, he, of course, was never liable for the tax.

The judgment is affirmed.

Lorigan, J., Henshaw, J., and McFarland, J., concurred.

SHAW, J., dissenting.—I dissent. The complaint in the case does not allege that the mortgage on which the tax was levied had been paid. The answer alleges that it was fully paid and satisfied on April 19, 1905, and the court so found. It is not claimed that the amount of the mortgage tax was deducted or retained by the mortgagor at the time this payment was made or at all. The case, therefore, presents the question of the rights of one who has purchased property burdened with a lien for the payment of an obligation of a third person with whom he has no direct contractual relations, and who has been compelled to pay money to discharge that lien, to recover of the person whose obligation he has thus been compelled to pay, the money paid in discharge thereof. In my opinion the facts make a clear case, under the common law, in *assumpsit* for money paid. The subject is exhaustively treated and the cases at common law discussed by Professor Keener in his work on Quasi Contracts (pp. 388, 400). He prefaces the discussion by this general statement of the rule: "No one officiously paying the debt of another can maintain an action either at law or in equity to recover the money so paid. . . . If, however, the payment made, though made without request, is not regarded in law as having been officiously made, the party so paying is entitled to be reimbursed by the debtor to the extent that the debt as between the debtor and himself should in equity and good conscience have been paid by the debtor." Other authorities are of similar effect: "An action for money paid is maintainable in every case in which there has been a payment of money by plaintiff to a third party, at the request of the defendant, express or im-

plied, with an undertaking, express or implied, to repay the
amount. . . . And whether the request be direct, as where the
party is expressly desired by the plaintiff to pay, or indirect,
where he is placed by him under a liability to pay, and does
pay, makes no difference." (27 Cyc. 833.) And further:
"Where, in order to protect his own property, real or personal,
the owner pays off an outstanding encumbrance which an-
other has undertaken or is legally liable to pay, he may recover
from such other the amount so paid by him in an action for
money paid." (27 Cyc. 834.) "It is well settled that where
one person is compelled to pay money which another is under
legal obligation to pay, the former is entitled to recover it
back from the person legally bound. The necessary request
will be implied as well as the promise, where the consideration
consists in the plaintiff's having been compelled to do that,
to perform which the defendant is legally compellable. Under
these circumstances the person paying the money has the
same right of action as if he had paid it at the other's ex-
press request." (15 Am. & Eng. Ency. of Law, 1108; 27
Cyc. 835, 837.) As to the application of this rule, the instance
of one who is compelled to pay money to prevent seizure or
sale of his property for the debt of another is given. (15
Am. & Eng. Ency. of Law, 1110.) The duty to pay taxes
is not, for some purposes, regarded technically as a debt.
Nevertheless the rule applies where the obligation to pay
consists of taxes assessed against the defendant as well as in
cases of ordinary debts. (27 Cyc. 835, citing many cases;
*Hogg* v. *Longstreth,* 97 Pa. St. 255; *Graham* v. *Dunnigan,*
6 Duer, (N. Y.) 629.) The decisions of the courts fully
establish these propositions. Those of the courts of this
country are very numerous. They are noted in detail in
35 Century Digest at columns 44 to 53 inclusive. A number
of the English cases are referred to by Professor Keener in
the chapter above cited. The rule has been followed in this
state and the right to recover money paid for taxes on a
mortgage interest, under facts similar to those here involved,
sustained in *San Gabriel etc Co.* v. *Witmer Bros. Co.,* 96 Cal.
623, [29 Pac. 500, 31 Pac. 588], and *Angus* v. *Plum,* 121 Cal.
608, [54 Pac. 97].

For the sake of clearness it should be said that in cases
of this character the request and promise said to be implied

in law are mere fictions invented by the common law courts because, under the common law system of procedure, no remedy was provided except an action of *assumpsit,* in which, according to the rule of pleading, the declaration was required to allege both a request and a promise, and it was therefore necessary to the ends of justice to presume a request and promise where none were made, in order to sustain the action and give the party a remedy to enforce a manifest right. In this state where forms of action are abolished and a statement of the facts constituting the cause of action is all that is required of the plaintiff (Code Civ. Proc., sec. 426), it is unnecessary to allege either the request or the promise, if the facts show a liability of defendant to plaintiff. The liability really rests, not on the implied request and promise, but on the principles of justice and right which require the defendant to repay to plaintiff what plaintiff has been obliged to pay for his benefit. (Keener on Quasi Contracts 14; *San Luis Obispo Co.* v. *Gage,* 139 Cal. 407, [73 Pac. 174].)

In equity also, the recovery may be had upon the principle that the plaintiff is subrogated to the rights of the party to whom the money was paid. "Any person having an interest in property on which there is a lien or encumbrance may, if necessary for his own protection, pay off the same and be substituted to the rights and remedies of a holder thereof." (27 Am. & Eng. Ency. of Law, p. 235.) The tax here involved was, when paid, a lien on the plaintiff's land. It was assessed upon an interest therein while that interest belonged to the defendant. It was therefore a personal obligation of the defendant, having "the effect of a judgment against the person." (Pol. Code, sec. 3716.) The statute of 1880 authorizes a county to sue in its own name to recover delinquent taxes. (Stats. 1880, p. 186; *Los Angeles* v. *Ballerino,* 99 Cal. 595, [32 Pac. 581, 34 Pac. 329].) If not technically a debt due the state, it was at least a personal obligation of the defendant, upon which a civil suit could be maintained and a personal judgment recovered by the county. (See, also, *Perry* v. *Washburn,* 20 Cal. 351; *People* v. *Seymour,* 16 Cal. 343, [76 Am. Dec. 521]; *Moore* v. *Patch,* 12 Cal. 270; *Oakland* v. *Whipple,* 39 Cal. 115; *Couts* v. *Cornell,* 147 Cal. 563, [109 Am. St. Rep. 168, 82 Pac. 194].) The plaintiff was compelled to pay

the tax to avoid a sale of his property therefor, and in equity he is subrogated to the right of the city and county of San Francisco and may maintain an action to recover the money paid. By the principles of the common law aforesaid the effect is the same. The said defendant owned the property, that is, the mortgage interest, at the time the lien for the taxes accrued. It was his duty, both in law and in morals, to pay the same. The plaintiff did not pay them officiously or voluntarily, but to protect his own property and only after the defendant had expressly refused to pay. By the principles stated he was entitled to be reimbursed by the defendant.

It is contended that the decisions of this court in *McPike* v. *Heaton,* 131 Cal. 110, [82 Am. St. Rep. 335, 63 Pac. 179] ; *Canadian etc. Co.* v. *Boas,* 136 Cal. 420, [69 Pac. 18], and *Henry* v. *Garden City Bank,* 145 Cal. 54, [78 Pac. 228], have overruled *San Gabriel Co.* v. *Witmer,* 96 Cal. 623, [29 Pac. 500, 31 Pac. 588], and *Angus* v. *Plum,* 121 Cal. 608, [54 Pac. 97], and have established a rule contrary to the principles above stated.

*McPike* v. *Heaton* was not a case of mortgage taxes. Heaton the owner of the land on the first Monday of March, conveyed by grant deed to one Jackson, on March 27th, and on the next day Jackson conveyed to McPike, the plaintiff. The case was treated as an action upon the covenant implied from the grant, and it was held that the covenant of Heaton against the tax-lien accruing during his ownership did not run with the land, nor pass to McPike with the grant by Jackson to him. The Witmer case was distinguished, although incorrectly, but not overruled. The further statement in the opinion, that the defendant was under no personal liability for the tax and that payment could be enforced only by a sale of the land, was manifestly incorrect in view of the statute of 1880 aforesaid and the decisions in *Los Angeles* v. *Ballerino,* 99 Cal. 595, [32 Pac. 581, 34 Pac. 329], and the other cases above mentioned. It may be that the case involved the principles applied here and might have been decided differently if those principles had been recognized and enforced, but they were not in any way referred to and I cannot presume that the court intended silently to overrule and set aside doctrines so well established. This is particularly

true of a common law rule which by statutory enactment is, made the rule of decision in all the courts of this state. (Pol. Code, sec. 4468.)

I cannot agree with the main opinion in holding that the case at bar is identical with *McPike* v. *Heaton,* 131 Cal. 110,. [82 Am. St. Rep. 335, 63 Pac. 179], as that action was considered in the opinion therein rendered. The conclusion there reached was manifestly based in large part upon the assertion which, as I have shown, was erroneously made, that the defendant was under no personal liability for the tax and payment could be enforced only upon a sale of the land. If that were the case here, if there were no obligation on the part, of the mortgagee to pay the tax assessed against the mortgage interest, either as between himself and the state, or as between himself and the plaintiff, then no principle of equity and good conscience would give the plaintiff the right to ask of him the repayment thereof. But when it is seen that the mortgagee was under both a moral and legal obligation to pay the tax and that such obligation was enforceable against. him by suit, it should be perceived at once that the highest. considerations of equity and good conscience demand that another should not be compelled to pay it gratuitously for his benefit without having a right of action against him.

In *Canadian etc. Co.* v. *Boas,* 136 Cal. 420, [69 Pac. 18], the defendant was a junior mortgagee, and the plaintiff a purchaser at a foreclosure sale, under a prior mortgage. The interest of Boas as mortgagee, on which the tax was assessed prior to the foreclosure, had been extinguished by the foreclosure and sale. In *Henry* v. *Garden City Bank,* 145 Cal. 54, [78 Pac. 228], the facts were substantially the same.. There may be a serious question in such cases, especially if the mortgagor is insolvent, whether, under the principles of law and equity above mentioned, when the mortgagee's beneficial interest has been completely destroyed and the entire estate thus transferred to a purchaser, such mortgagee is "in equity and good conscience," as between him and the purchaser, bound to pay the taxes accrued on an interest which has become a mere shadow, its substance having passed to the purchaser. In actions for money paid by plaintiff to defendant's use, the existence of this element in plaintiff's grounds of recovery in each case, or class of cases, must depend upon

the facts of the particular case. It may be conceded that, in this state, these cases establish the rule that equity and good conscience do not demand that a junior mortgagee shall pay the tax on his former mortgage interest, for the benefit of a purchaser at a foreclosure sale which has demonstrated that that interest had no real value.

The present case is of a different character. There has been no foreclosure, the suit is practically by a mortgagor against a mortgagee for taxes paid on the mortgagee's interest, which interest has been made good by payment. The mortgagee was justly chargeable with the tax thereon. By his neglect it has devolved upon plaintiff's property, thereby forcing the plaintiff to pay the tax to relieve the property from the lien. The payment unquestionably was of benefit to the defendant. Therefore, even if those decisions are sound, the principles on which they rest should not be applied to this case.

It is true that there is a long line of cases holding that where one who buys property by quitclaim deed and subsequently finds that property encumbered by liens of which he has taken no account in making his purchase, and which he is compelled to pay to protect his property, he has no right of action to recover the money thus paid from his grantor, and that no covenant not running with the land will protect him as against previous owners, or give him a right of action against them. But it is also true, and has been settled for many years by the authorities above cited, that where such person is thus compelled to pay the debt of another which, as between himself and that other, the other in equity and good conscience should have paid, he may recover the amount paid without resort to any covenant and in the absence of any contractual relations between them. The right of action in such cases does not spring from the existence of contractual relations, but from principles of justice and equity which do not require one person to pay the debt of another, under compulsion, and not officiously, which that other was in duty bound to pay himself.

Sloss, J., and Beatty, C. J., concurred.

Rehearing denied.