[Civ. No. 44149. First Dist.. Div. Four. Dec. 15, 1978.]

JOSEPH V. GARCIA et al., Plaintiffs and Appellants, v.
COUNTY OF SANTA CLARA, Defendant and Respondent.

**COUNSEL**

Robert L. Mezzetti for Plaintiffs and Appellants.

Selby Brown, Jr., County Counsel, and Ralph F. Long, Deputy County Counsel, for Defendant and Respondent.

## OPINION

**BRUNN, J.**\*—In California property owners usually are not personally liable for the payment of real property taxes. But there are exceptions and this case concerns the applicability of one of them. It also involves the interaction of state and federal law.

The facts are simple enough. The Garcias owned real property in Santa Clara County (hereafter county). It was subject to a deed of trust guaranteed by the Small Business Administration (hereafter SBA), a United States government agency. The Garcias did not pay the real property taxes on the property for the years 1971-1972, 1972-1973, 1973-1974 and 1974-1975, amounting to a little over $10,000.

In July 1974, the SBA foreclosed and acquired the property. Following foreclosure, the county transferred the property taxes from the secured to the unsecured roll.[1]

In February 1975, the Garcias were adjudicated bankrupts. Two years later they brought the present declaratory relief action. Their complaint alleged the existence of a dispute between them and Santa Clara County as to whether they were personally liable for the real property taxes that had been levied against their property while they owned it.

The trial court held that the Garcias were liable, except as to taxes for the year 1971-1972. These latter taxes, the court held, were discharged in bankruptcy under the three-year rule of the Bankruptcy Act, 11 United States Code section 35(a).

■ We agree with the trial court that the discharge in bankruptcy does not help the Garcias. We reverse, however, because we find that the county's tax liens were not lost or made subordinate to the SBA's interest when the SBA foreclosed. Accordingly, the county should not have transferred the property from the secured to the unsecured roll.

---

\*Assigned by the Chairperson of the Judicial Council.

[1]The county did not actually make this transfer until December 1975. The parties have raised no issue related to this delay.

# I

## The bankruptcy did not affect appellants' tax liability

The Bankruptcy Act in 11 United States Code section 35(a) provides rather plainly that "discharge in bankruptcy shall release a bankrupt from all of his provable debts, whether allowable in full or in part, *except* such as (1) *are taxes which became legally due and owing by the bankrupt* to the United States or to any State *or any subdivision thereof* within three years preceding bankruptcy. . . ." (Italics added.)

If the taxes were, as appellants argue, not their personal obligation, then the discharge did not affect the taxes at all: if they were not a debt that they owed, there was nothing to discharge. And if they were appellants' obligation they remained so, by the terms of section 35(a), at least with respect to the taxes which became due within three years preceding bankruptcy.

The real question is whether the taxes became appellants' personal obligation following the SBA foreclosure and the county's transfer of the taxes to the unsecured roll, or whether the SBA's acquisition absolved appellants of responsibility for the taxes.

# II

## The county improperly transferred the taxes to the unsecured roll because the SBA foreclosure did not deprive it of its lien. Thus, the county may not assert liability against appellants.

A. *The general rule of nonliability.*

█ The general principles that apply to property taxes in California are that they "are imposed on the ownership of property as such; . . . no personal liability arises from their nonpayment, the sole security for the taxes being the property itself." (*City of Huntington Beach* v. *Superior Court* (1978) 78 Cal.App.3d 333, 340 [144 Cal.Rptr. 236]; *Helvey* v. *Sax* (1951) 38 Cal.2d 21, 24 [237 P.2d 269] (property tax operates in rem against the property); *William Ede Co.* v. *Heywood* (1908) 153 Cal. 615

[96 P. 81]; *Henry* v. *Garden City Bank etc. Co.* (1904) 145 Cal. 54 [78 P. 228]; *McPike* v. *Heaton* (1900) 131 Cal. 109, 111 [63 P. 179].)

■ A tax on real property becomes a lien against that property (Rev. & Tax. Code, § 2187). If the tax is not paid the normal method of enforcement is sale of the property (Rev. & Tax. Code, § 3436 et seq.; 5 Witkin, Summary of Cal. Law (8th ed. 1974) p. 4142).

In the trial court the Garcias relied heavily on these general rules. Respondent urged the exception which we will discuss next.

B. *The secured and unsecured rolls.*

■ Property taxes which are adequately secured by the lien on the property are carried on the "secured roll" (Rev. & Tax. Code, § 109). But the lien may become inadequate because the value of the property is too low to secure the payment of taxes. Or the lien may disappear because the property is transferred to local, state or federal government under circumstances where the government acquires it, in essence, free of the tax lien. When either event occurs any taxes which are due are transferred to the "unsecured roll." (Rev. & Tax. Code, §§ 134, 4986, 2921.5.)

■ The significance of this step is that it allows the taxing agency to collect the back taxes from the taxpayer personally. It may seize and sell the taxpayer's personal property, improvements and possessory interests. It may also obtain a judgment against the taxpayer by summary proceedings. (Rev. & Tax. Code, §§ 2951, 3102; 5 Witkin, Summary of Cal. Law, *op. cit., supra,* pp. 4155-4157.)

This is the result that appellants wish to avoid. The precise issue is whether the transfer of the property to the SBA was the kind of change of ownership that entitled the county to transfer the taxes to the unsecured roll. This in turn depends on whether the county lost its lien or its ability to enforce it when the SBA foreclosed: The test under Revenue and Taxation Code section 4986, subdivision (b), is whether the property "because of such public ownership . . . [is] . . . not subject to sale for delinquent taxes. . . ."[2]

---

[2]Revenue and Taxation Code section 4986, subdivision (b), provides in relevant part: "On property acquired after the lien date by the United States of America, if such property upon such acquisition becomes exempt from taxation under the laws of the United States, or by the state or by any county, city, school district or other public entity, and because of such public ownership becomes not subject to sale for delinquent taxes, no cancellation shall be made in respect of all or any portion of any such unpaid tax, or

*C. The county's right to enforce its tax lien after the SBA foreclosure.*

█ The key provision that controls our inquiry is contained in the congressional act establishing the SBA, 15 United States Code, chapter 14A, section 646. That section states: "Any interest held by the Administration in property, as security for a loan, shall be subordinate to any lien on such property for taxes due on the property to a State, or political subdivision thereof, in any case where such lien would, under applicable State law, be superior to such interest if such interest were held by any party other than the United States."

The meaning of the statute could hardly be plainer. "We think it obvious that it was the purpose of the Congress to place the Small Business Administration's security claims against property in the several states upon the same level as those held by private parties." (*United States* v. *Clover Spinning Mills Company* (4th Cir. 1966) 373 F.2d 274, 278.)

Under section 646 the county's tax lien survived and could have been enforced against the SBA.

Respondent urges that section 646 applies only to loans which the SBA made itself, not to loans for which the funds came from other sources and which were only guaranteed by the SBA. This distinction flies in the teeth of the clear wording of the statute and was expressly rejected in *U. S.* v. *California-Oregon Plywood, Inc.* (9th Cir. 1975) 527 F.2d 687, 690: "We see no reason to disregard the statutory language. Given the lack of convincing authority to the contrary, we hold that the plain language of § 646 applies to the present case. To say otherwise is to create an ambiguity where none existed."

The court disapproved two district court decisions on which respondent relies. (*United States* v. *Maes* (D.Colo. 1969) 316 F.Supp. 1267; *United States* v. *Dyna-Tex, Incorporated* (E.D.Tenn. 1972) 372 F.Supp. 278.)

We are in complete agreement with *U.S.* v. *California-Oregon Plywood, Inc., supra,* both on the merits of its view of section 646 and because it

---

penalties or costs, but such tax, together with such penalties and costs as may have accrued thereon while on the secured roll, shall be paid through escrow at the close of escrow or, if unpaid for any reason, they shall be collected like any other taxes on the unsecured roll."

deals, like the present case, with California real estate taxes. The court explicitly held that state and county tax liens have priority over the SBA.

For these reasons, the foreclosure did not prevent respondent from asserting its tax lien. Thus, the transfer of the taxes to the unsecured roll was improper.

■ Respondent finally urges that we should not deal with the applicability of section 646 because appellants did not raise it in the trial court. It is settled, however, that the theory-of-trial doctrine does not apply where, as here, appellants raise solely questions of law. (*Ward* v. *Taggart* (1959) 51 Cal.2d 736, 742 [336 P.2d 534].)[3] While we have, therefore, decided the question, we note that the trial court thoughtfully considered the issue before it. Without being made aware of the federal statute, the trial court could not have decided other than it did.

The judgment is reversed. The cause is remanded to the trial court with directions to enter judgment as prayed in the complaint.

Rattigan, Acting P. J., and Christian, J., concurred.

---

[3]The situation would be different "if the new theory contemplates a factual situation the consequences of which are open to controversy and were not put in issue or presented at the trial. . . ." (*Panopulos* v. *Maderis* (1956) 47 Cal.2d 337, 341 [303 P.2d 738].) Respondent notes that there was no evidence about the source of the loan which the SBA guaranteed. However, as we have discussed, the result is unaffected by the source of the funds. Respondent also suggests that its lien may have been unenforceable at the time of the foreclosure because of the possible existence of superior liens. Under Revenue and Taxation Code section 4986, subdivision (b), this is also immaterial. The question under that section is, as we have seen, whether the county's lien became unenforceable "because of" the SBA foreclosure, not whether other factors existed that made it difficult or impossible to enforce the lien. Respondent has not claimed at any time, either at trial or here, that it can assert personal liability except in accord with section 4986.