[No. A046821. First Dist., Div. Two. Aug. 2, 1990.]

GEORGE PEREZ, as Trustee, etc., et al., Plaintiffs and Respondents. 222 SUTTER STREET PARTNERS, Defendant and Appellant.

## COUNSEL

Stanton, Kay & Watson, and James P. Watson for Defendant and Appellant.

Heller, Ehrman, White & McAuliffe, Peter S. Hecker and Joseph A. Gross for Plaintiffs and Respondents.

## OPINION

**SMITH, J.**—We decide in this case that a trustee under a deed of trust in nonjudicial foreclosure proceedings has no duty under Civil Code section 2924b to give notice of default to affected easement holders unless they have specially requested notice. On that basis, we will uphold summary judgment granted in favor of trustees under the wills of Julie B. and Louis J. Lalanne (Trustees), who brought this quiet-title/declaratory relief action against 222 Sutter Street Partners, a California limited partnership (Partners), to determine Partners' rights in a claimed easement for light and air across trust property.[1]

### BACKGROUND

The trust property is located at 425 Bush Street in San Francisco. That parcel and an adjoining one at 429-431 Bush Street abut the rear boundary of Partners' namesake property at 222 Sutter Street. All three parcels are developed commercial property. A five-story office building stands at 425 Bush, to which the Lalanne family has held title since 1955, except for a period from December 1983 to March 1987, during which events at issue in this case occurred. At the start of those events, in early 1983, 425 Bush was held by the Lalanne family trusts while 429-431 Bush and 222 Sutter were both held by Mycix Holdings, Inc. (Mycix).

---

[1] Trustees are George Perez, Kenneth L. Lalanne and Robert J. Lalanne. Each trust owns an undivided one-half interest in the subject property.

In mid-1983, investors represented by Harold Baxter (collectively Golden Gate) separately approached Trustees and Mycix about acquiring 425 Bush and 429-431 Bush. Golden Gate planned to demolish existing structures and build a hotel on the combined Bush Street parcels.

In negotiations with Golden Gate, Christopher S. C. Chan of Mycix pressed for Golden Gate to grant an air and light easement across 429-431 Bush for the benefit of Mycix's other parcel, at 222 Sutter, the aim being to preserve air and light received at the rear of the 222 Sutter building. A sales agreement entered into on July 29, 1983, provided for such an easement to be recorded. A draft easement prepared in September defined the easement as burdening 429-431 Bush and incorporated a legal description of the burdened property.

Meanwhile, parallel negotiations between Golden Gate and Trustees for 425 Bush did not include easement discussions or any mention of the easement across the other parcel. (Chan wanted a similar easement across 425 Bush but evidently planned to negotiate directly with Golden Gate after the purchase.) By a sales agreement executed on July 28, Golden Gate would pay $1 million down, and Trustees would take back a promissory note for the remaining purchase price ($4.1 million), secured by a first deed of trust on the property. The agreement needed probate court approval, which was obtained on August 31.

Golden Gate encountered financing difficulties and so did not close the sales until December 30. A final draft of the easement for 429-431 Bush was prepared earlier that month, and the escrow instructions for that property called for it to be recorded as part of the transaction. Trustees continued to have no knowledge of the easement. Recording for both sales took place on December 30, with the 429-431 Bush documents recorded first. Thus, the easement was recorded several documents *before the trust deed on 425 Bush.*

Through inadvertence in its preparation, the easement, while properly referring to 429-431 Bush as the burdened parcel, incorporated a legal description of *425* Bush—error which may have stemmed from error in the July 28 and 29 sales agreements, each of which mistakenly incorporated a legal description of the other.

Over a year later, in February 1985, Mycix's Chan and then-president of Golden Gate, William P. Cotrell, executed a modification of the easement. The modification did not refer to 425 Bush but extended the original easement to "create[] and preserve[] a lightwell or courtyard . . . [over] the full length of the rear of the existing building located at the Dominant Tenement"—i.e., 222 Sutter. The rear property line of 222 Sutter, of course, abuts 429-431 Bush *and 425 Bush* (plus the dead end of an alleyway

running along 429-431 Bush called Mark Lane). The modification provided that all other terms of the original easement would remain "in full force and effect" and did not describe the earlier easement except to refer to the document's place of recording in the city's official records. The modification was recorded on March 1, 1985.

Around this time, Golden Gate fell behind in its payments to Trustees on 425 Bush. Trustees recorded a notice of default in April but rescinded it in July.

Partners entered the picture for the first time when it acquired 222 Sutter from Mycix (and a related corporation) in November 1985. The grant deed from Mycix to Partners, recorded on November 27, referred to the recorded easement and modification, though describing only 425 Bush.[2]

Golden Gate was ultimately unable to develop the hotel and defaulted. Trustees recorded a second notice of default on January 30, 1986, and, exercising the power of sale under the deed of trust, eventually reacquired 425 Bush on March 17, 1987, through nonjudicial foreclosure. Mycix, the prior owner of 222 Sutter, received notice of the default, having filed a special request for notice (Civ. Code, § 2924b, subd. (a)) as the holder of an easement of March 1, 1985 (i.e., the modified easement). Partners, which had not requested notice, was not notified and did not learn of the foreclosure until afterward.

Trustees tried to resell the property but ran into difficulty when the easement appeared as a cloud on title.[3] They brought this action after Partners refused to quitclaim any rights in the easement.

Partners moved for summary judgment, urging that the foreclosure did not affect their rights in the easement because Trustees failed to give them notice of the default as assertedly required by Civil Code section 2924b, subdivision (c)(2)(A). On a cross-motion for summary judgment, Trustees countered that the statute did not require notice to easement holders and, in

---

[2] "Exhibit A" to the deed identifies: "A perpetual easement and right to receive light and air as an appurtenance to Parcel 1 above [222 Sutter], as granted to Mycix Holdings, Inc., and Christopher S. C. Chan, in the instrument recorded December 30, 1983, Series No. D444816, Book D624, Official Records, page 1018, and amended thereto by instrument recorded March 1, 1985, Book D794, Official Records, page 1191, over the following described parcel of land . . . . " The exhibit goes on to describe 425 Bush but not 429-431 Bush.

[3] All three Trustees declared below that they first became aware of the easement after the foreclosure. "Trustee's sale guarantees" prepared in January and April 1986 for Ticor Title Insurance Company, trustee under the deed of trust, showed Mycix (the *prior* owner of 222 Sutter) as having a light and air easement recorded December 30, 1983. The April guaranty also shows an amendment of March 1, 1985. Both noted: "Said easement appears to be appurtenant to said land. However, no examination has been made as to the validity of said easement."

any event, that the easement was not in the grantor's chain of title, did not impart constructive notice and was void for uncertainty.

The superior court granted summary judgment in favor of Trustees, concluding that the foreclosure extinguished any rights Partners may have had in the easement. Partners appeals following entry of final judgment in Trustees' favor (Code Civ. Proc., § 437c, subds. (j), (*l*)).

### DISCUSSION

The parties reargue most of the issues raised below. However, we resolve the appeal on the single ground that Partners, as an easement holder, was not entitled to mandatory notice under the statute. ██ That ground is dispositive and posed a pure question of law properly decided on summary judgment (Code Civ. Proc., § 437c, subd. (c)) in this case.[4]

Our analysis concerns Civil Code section 2924b (hereafter section 2924b) which governs notices of default and sale in nonjudicial foreclosure under a power of sale in a deed of trust or mortgage. The parties dispute the meaning of a 1976 amendment (Stats. 1976, ch. 1149, § 1, pp. 5206-5208, eff. July 1, 1977) which, while retaining provision for notice to those who have requested special notice (§ 2924b, subd. (b)), for the first time mandated notice to an expanded class of persons who have *not* requested notice (§ 2924b, subd. (c)).[5]

---

[4] The parties dwell at length on reasons expressed by the court on the record when the motions were heard, especially the court's thinking on whether Trustees had actual or constructive notice of the easement or its subordinate status. Whatever the court's stated reasons, however, summary judgment must be sustained if correct on any theory presented. (*Barbary Coast Furniture Co.* v. *Sjolie* (1985) 167 Cal.App.3d 319, 331 [213 Cal.Rptr. 168], disapproved on other grounds in *Silberg* v. *Anderson* (1990) 50 Cal.3d 205, 219 [266 Cal.Rptr. 638, 786 P.2d 365].)

Trustees' motion squarely raised the issue of whether mandatory notice to easement holders was required. The issue was thoroughly briefed, complete with legislative history provided. Partners insists that it was not relied on by the trial judge, focusing on the judge's comment at the hearing that he had read the argument but did not know whether he would be relying on it. Whatever he *relied on*, however, the fact remains that the issue was squarely *raised* and so may be pursued now on appeal.

Moreover, the meaning of the statute poses a pure question of law which could be raised for the first time on appeal anyway. (*Garcia* v. *County of Santa Clara* (1978) 87 Cal.App.3d 319, 326 [151 Cal.Rptr. 80]; *Ward* v. *Taggart* (1959) 51 Cal.2d 736, 742 [336 P.2d 534].) The statute's application to this case also poses a pure question of law since there is no dispute that Partners was an easement holder which had not requested special notice under the statute. (Cf. *Garcia* v. *County of Santa Clara, supra*, 87 Cal.App.3d 319, 326, fn. 3; *Engs Motor Truck Co.* v. *State Bd. of Equalization* (1987) 189 Cal.App.3d 1458, 1464 [235 Cal.Rptr. 117].)

[5] The relevant parts of section 2924b, subdivision (c), now provide, in language only cosmetically changed since July 1977:

"(c) The mortgagee, trustee, or other person authorized to record the notice of default shall do the following:

## History

The duties of a foreclosure trustee are strictly defined by the deed and the relevant statutes. Our high court has cited "persuasive policy reasons which militate against a judicial expansion of those duties" (*I. E. Associates* v. *Safeco Title Ins. Co.* (1985) 39 Cal.3d 281, 288 [216 Cal.Rptr. 438, 702 P.2d 596]), noting: "The nonjudicial foreclosure statutes—an alternative to judicial foreclosure—reflect a carefully crafted balancing of the interests of beneficiaries, trustors, and trustees. Beneficiaries, of course, want quick and inexpensive recovery of amounts due under promissory notes in default. Trustors, on the other hand, need protection against the forfeiture of valuable property rights. Trustees, the middlemen, need to have clearly defined responsibilities to enable them to discharge their duties efficiently and to avoid embroiling the parties in time-consuming and costly litigation. In taking all of these concerns into account, the statutes strike an overall balance favoring the protection of trustors. [Citation.]" (*Ibid.*)

Before July 1977, a trustee had to give notice only to those persons contractually specified in the security instrument itself and to those who had *requested* notice under the statute. (*Garfinkle* v. *Superior Court* (1978)

---

"(1) Within one month following recordation of the notice of default, deposit or cause to be deposited in the United States mail an envelope, sent by registered or certified mail with postage prepaid, containing a copy of the notice with the recording date show thereon, addressed to each person set forth in paragraph (2), provided that the estate or interest of any person entitled to receive notice under this subdivision is acquired by an instrument sufficient to impart constructive notice of the estate or interest in the land or portion thereof which is subject to the deed of trust or mortgage being foreclosed, and provided the instrument is recorded in the office of the county recorder so as to impart that constructive notice prior to the recording date of the notice of default and provided the instrument as so recorded sets forth a mailing address which the county recorder shall use, as instructed within the instrument, for the return of the instrument after recording, and which address shall be the address used for the purposes of mailing notices herein.

"(2) The persons to whom notice shall be mailed under this subdivision are:

"(A) The successor in interest, as of the recording date of the notice of default, of the estate or interest or any portion thereof of the trustor or mortgagor of the deed of trust or mortgage being foreclosed.

"(B) The beneficiary or mortgagee of any deed of trust or mortgage recorded subsequent to the deed of trust or mortgage being foreclosed, or recorded prior to or concurrently with the deed of trust or mortgage being foreclosed but subject to a recorded agreement or a recorded statement of subordination to the deed of trust or mortgage being foreclosed.

"(C) The assignee of any interest of the beneficiary or mortgagee described in subparagraph (B), as of the recording date of the notice of default.

"(D) The vendee of any contract of sale, or the lessee of any lease, of the estate or interest being foreclosed which is recorded subsequent to the deed of trust or mortgage being foreclosed, or recorded prior to or concurrently with the deed of trust or mortgage being foreclosed but subject to a recorded agreement or statement of subordination to the deed of trust or mortgage being foreclosed.

"(E) The successor in interest to the vendee or lessee described in subparagraph (D), as of the recording date of the notice of default.

" . . . . . . . . . . . . . . . . . ."

21 Cal.3d 268, 274-275 [146 Cal.Rptr. 208, 578 P.2d 925]; *McClatchey* v. *Rudd* (1966) 239 Cal.App.2d 605, 608 [48 Cal.Rptr. 783]; *Lancaster Security Inv. Corp.* v. *Kessler* (1958) 159 Cal.App.2d 649, 652-653 [324 P.2d 634].) ■ There was then, and is now, "no authority for the proposition that a trustee under a deed of trust owes any duties with respect to exercise of the power of sale beyond those specified in the deed and the statutes." (*I. E. Associates* v. *Safeco Title Ins. Co., supra*, 39 Cal.3d 281, 288 [declining to impose a common law duty of reasonable inquiry on trustees to ascertain *current* addresses of trustors when giving notice, noting that it "would bring far more cost and uncertainty into the system" (p. 289)].)

With the 1976 amendment, the Legislature restruck the balance to reduce harshness where interest holders neglect to use the statutory, special request procedure. Assemblyman Paul Bannai introduced Assembly Bill No. 3312, sponsored by the State Bar's Committee on the Administration of Justice. As first introduced in March of that year, the bill proposed a single new subdivision requiring notice "to *each person who* [between the recording of the trust deed or mortgage and notice of default] *has acquired and then owns,* as shown by those public records which impart constructive notice, *any right, title or interest in the property* encumbered by the deed of trust or mortgage being foreclosed, *except easements, licenses, profits, servitudes and liens other than the lien of mortgage which encumbers the property being foreclosed or any portion thereof* and which deed of trust or mortgage is subordinate to the deed of trust or mortgage being foreclosed . . . ." (Italics added.) (Assem. Bill No. 3312 (1975-1976 Reg. Sess.) § 1, Mar. 4, 1976.)

An analysis of the bill as introduced explained: "The bill is specifically aimed towards protecting parties having an interest in real property but who through ignorance or inadvertence do not request notice in compliance with the provisions of [section] 2924b. Excluded from the simplified notice procedures would be holders of easements, licenses, profits, servitudes and liens except junior mortgage liens. According to the sponsors of this legislation, these latter interested parties are excluded because they normally are deeply involved with the proceedings and have requested notice already or they involve the type of interest which rarely comes forward during a foreclosure proceeding. In any case, however, the enumeration of these exceptions could make it more difficult for a trustee to determine who is or is not entitled to receive notices." (Assem. Com. on Finance, Ins. and Commerce, Analysis of Assem. Bill No. 3312 (1975-1976 Reg. Sess.) as introduced Mar. 4, 1976.)[6]

---

[6] We use materials furnished below by the Legislative Intent Service. (See *Commodore Home Systems, Inc.* v. *Superior Court* (1982) 32 Cal.3d 211, 218-219 [185 Cal.Rptr. 270, 649 P.2d 912]; *Knighten* v. *Sam's Parking Valet* (1988) 206 Cal.App.3d 69, 77 & fn. 2 [253 Cal.Rptr. 365]; *Frio* v. *Superior Court* (1988) 203 Cal.App.3d 1480, 1487 & fn. 3 [250 Cal.Rptr. 819].)

An analysis of the bill by the sponsor is similar but explores the trustee's perspective further: "It is recognized that an additional burden will be placed on the trustees which will require that they get from a title company a more complete trustee's sale guarantee than they now receive and that the trustees would also assume additional risks. The cost of these additional burdens and risks will be added to the trustee's fees and charges. Inasmuch as between 66% and 85% of foreclosures commenced result in reinstatement, this additional cost would be passed on to the reinstating owner. However, *to minimize the additional burden and risk* and thus minimize additional costs, junior lien claimants (other than mortgagees and beneficiaries of subsequently recorded mortgages and deeds of trusts) such as judgment creditors, tax lien claimants, mechanic's lien claimants, *easement holders* and lessees *are not protected by this amendment*. Experience has shown that judgment lien claimants and holders of tax liens rarely act to protect their interest in the case of a foreclosure of a senior deed of trust; mechanic's lien claimants attack the priority of the deed of trust and if not superior to the deed of trust rarely act; while *easement holders* and lessees *are more closely involved in such a situation* [.] [A]fter weighing the benefits of giving these notices to such persons against the problems involved and the costs to give such notices, A.B. 3312 will not require notices to be sent to them unless they have recorded a request for such notice." (Italics added.) (Analysis of Assem. Bill No. 3312 (1975-1976 Reg. Sess.), prepared by Harold F. Bradford, Legis. Rep. for State Bar.)

The language of the bill ultimately changed in several respects, at least partly in response to a letter to Assemblyman Bannai from Charles J. Tighe, the chairman of the Legislative Committee of the Institute of Trustee's Sales Officers (ITSO). Noting his familiarity with the sponsoring State Bar committee's work through contact with one of its members, Mr. Tighe wrote:

"The Legislative Committee of ITSO . . . does have some recommendations as to restructuring the bill, although *it is not our intention and our recommendations do not attempt to modify the concept of the bill*. The bill, as written does not state that the newly entitled persons to receive notices are such because they did not file a request for notice. Further, the bill does not state the time when the notices of sale are to be mailed out to this newly entitled group. Also further, *we believe that the existing construction of the new section wherein notices are to be sent to all parties 'who have the right, title or interest . . . except easements, licenses, profits, servitudes and liens . . . ' makes it far more difficult for a trustee to determine who is or is not entitled to receive notices.* [¶] I am enclosing the Legislative Committee's recommendations to correct the items that I've outlined above, together with a photo copy of the bill, showing where these new subdivisions would be placed. We believe that with these changes that [*sic*] the bill begins to be

somewhat more workable from a trustee[']s viewpoint . . . ." (Italics added.)

We do not have a copy of the proposed draft revisions, but the legislation as finally passed in September 1976 shows a restructuring basically in accord with the suggestions made in the letter (including a previously made suggestion that notice by registered or certified mail be expressly authorized). The single subdivision initially proposed was subdivided further to separate out the time and manner of mailing plus the recording and constructive-notice provisions (now § 2924b, subd. (c)(1); fn. 5, *ante*).

Also, and of prime significance here, the formerly broad but *exclusionary* language describing those entitled to unrequested notice (those owning "any right, title or interest in the property . . . except easements," etc.) became specific and *inclusive*. The final wording set out, in separate subparts (now subds. (c)(2)(A)-(c)(2)(E)), five classes of those entitled to it. (Stats. 1976, ch. 1149, § 1, p. 5207; fn. 5, *ante*.)

### Analysis

■■■ Partners contends that an easement holder is included in section 2924b, subdivision (c)(2)(A), as "[*a*] *successor in interest,* as of the recording date of the notice of default, *of the estate or interest or any portion thereof of the trustor or mortgagor* of the deed of trust or mortgage being foreclosed." (Italics added.) We reject that view as unsupported by either the plain language, its context or the legislative history.

We start with the language, as we must in all cases. (*Committee of Seven Thousand* v. *Superior Court* (1988) 45 Cal.3d 491, 501 [247 Cal.Rptr. 362, 754 P.2d 708]; *Consumer Product Safety Comm'n* v. *GTE Sylvania* (1980) 447 U.S. 102, 108 [64 L.Ed.2d 766, 772, 100 S.Ct. 2051].) The "mortgagor of the deed of trust" in this case is Golden Gate, which owned both Bush Street parcels over which the easement ran and negotiated those easements with Mycix. Partners' position, then, is that, as a successor to the easement originally granted to Mycix, Partners is a "successor in interest, . . . of the estate or interest[,] or any portion thereof[,] of [Golden Gate]" (§ 2924b, subd. (c)(2)(A)). This, we think, does violence to the language. While the easement was certainly an "interest" of sorts held by Partners (and by Mycix before Partners), it was a form of interest never held *by Golden Gate* as such. That is a legal impossibility in this case since one cannot hold an easement across one's own property. (Civ. Code, § 805.) An easement did not exist until it was created in favor of *Mycix.*[7] Partners is thus a "successor in interest" to an interest held by Mycix, not Golden Gate.

---

[7] We assume the existence of the easement, and its being held by Mycix and Partners, purely for ease of discussion.

Partners notes the obvious—that an easement is created *out of* property rights held by the grantor (the owner of the servient tenement) and is in that sense an interest, or a "portion thereof," *derived from* the grantor. ■ ■ ■■■■ However, that reasoning would stretch the terms "successor" and "successor in interest" way beyond their ordinary meanings.[8]

■ Examination of the surrounding provisions of which section 2924b, subdivision (c)(2)(A), is a part (*Select Base Materials* v. *Board of Equal.* (1959) 51 Cal.2d 640, 645 [335 P.2d 672]) further supports our conclusion. If "interest" were interpreted as broadly as Partners would have it, there would be no need for two further subdivisions mandating notice to lease-holders and vendees under a contract of sale (subd. (c)(2)(D)) and their successors in interest (subd. (c)(2)(E)). (See fn. 5, *ante.*) Those interests, after all, arise out of the owner's rights in the property, just as easements do. We reject Partners' view, which would render these other subdivisions redundant. (*Wells* v. *Marina City Properties, Inc.* (1981) 29 Cal.3d 781, 788 [176 Cal.Rptr. 104, 632 P.2d 217].)

Assuming for the sake of argument that there is ambiguity in the statute needing resolution by resort to extrinsic aids (*Mutual Life Ins. Co.* v. *City of Los Angeles* (1990) 50 Cal.3d 402, 407 [267 Cal.Rptr. 589, 787 P.2d 996]), our examination of the legislative history outlined above only confirms the conclusion that easement holders are not entitled to notice without request. The bill as originally introduced in the Assembly expressly *excluded* easement holders, among others, and both of the analyses prepared for the bill explained that the decision to exclude them was part of a pragmatic attempt to balance the benefits and burdens of notice. Easement holders were relegated to the statute's efficient and long-standing special request procedure. (§ 2924b, subd. (a).)

Partners interprets the ultimate omission of the language expressly excluding easement holders as signaling an intent to include them, and it argues that the interpretation is consonant with the statute's aim of reducing inadvertent loss of rights by interested parties who fail to request notice.

We find no intent to include easement holders. The legislative materials, particularly the letter from the ITSO legislative committee chairman, show that the bill was restructured to make it easier for foreclosure trustees to decide who is, and who is not, entitled to notice. ■ Anytime a statute uses extremely broad language and then lists specific exceptions, it is vulner-

---

[8] "Successor" is defined as: "One that succeeds or follows; one who takes the place that another has left, and sustains the *like part or character*; . . ." (Black's Law Dict. (5th ed. 1979) p. 1283, col. 2, italics added.) "Successor in interest" is defined as: "One who follows another in ownership or control of property. In order to be a 'successor in interest,' a party must continue to retain the *same rights* as original owner . . . and there must be *change in form only and not in substance*, . . ." (*Ibid.*, italics added.)

able to an argument, under the doctrine *expressio unius est exclusio alterius*, that all interests not expressly excluded were meant to be included. (*Mutual Life Ins. Co.* v. *City of Los Angeles, supra,* 50 Cal.3d 402, 407.) Myriad situations could have arisen in which minor interest holders not anticipated in the drafting came forward to challenge the lack of notice and undo a trustee's sale. The safer, more certain course was to eliminate the broad language and exceptions ("any right, title or interest in the property . . . except easements," etc.) and replace them with a list of persons who *are* entitled to notice. That is exactly what was done. In these circumstances, we cannot infer that eliminating the specific exclusions was a move to include them.

Including all interests would, of course, reduce uncertainty in one sense. However, it would impose untold risks and burdens on trustees, marking a dramatic departure from the Legislature's practice of *balancing* the interests involved. (*I. E. Associates* v. *Safeco Title Ins. Co., supra,* 39 Cal.3d 281, 288-289.) The fact that the statute, as enacted, specifies particular classes of persons entitled to notice and retains the notice-request procedure shows that the Legislature has not abandoned that traditional balancing and shifted all risks and burdens to trustees. The practical burdens of searching out recorded easements, which are usually appurtenant to neighboring parcels, and numerous less direct recorded interests could be daunting. (*Ibid.*; cf. *Monterey S. P. Partnership* v. *W. L. Bangham, Inc.* (1989) 49 Cal.3d 454, 461, fn. 4 [261 Cal.Rptr. 587, 777 P.2d 623].) There is no indication that the 1976 amendment was intended to impose such burdens.

Summary judgment was properly granted.

## DISPOSITION

The judgment is affirmed.

Kline, P. J., and Peterson, J., concurred.

Appellant's petition for review by the Supreme Court was denied October 17, 1990.