[No. D017986. Fourth Dist., Div. One. May 5, 1994.]

Estate of DELLA YATES, Deceased.
BARBARA BAKER, as Public Administrator, etc., Plaintiff and Respondent, v.
WEST END FINANCIAL CORPORATION, INC., Defendant and Appellant.

**COUNSEL**

Weeks, Rathbone, Robertson & Johnson and William L. Johnson for Defendant and Appellant.

Lloyd M. Harmon, Jr., County Counsel, Diane Bardsley, Chief Deputy County Counsel, and Leonard W. Pollard II, Deputy County Counsel, for Plaintiff and Respondent.

**OPINION**

**NARES, J.**—Defendant West End Financial Corporation, Inc. (West End), appeals from an order setting aside a nonjudicial foreclosure and ordering West End to transfer title of certain real property to plaintiff Barbara Baker, public administrator, as administrator of the estate of Della Yates. We affirm the order.

### FACTUAL BACKGROUND

In 1974, Della Yates purchased a home at 411 Ringwood Drive in National City. During the next 16 years, Yates accrued approximately $100,000 equity in the property. In 1990, Yates's property was valued at $120,000, subject to a $2,400 first trust deed and a $20,000 second trust deed.

On March 9, 1990, Yates entered into a $3,000 contract with Central Construction, Inc., for the exterior painting of her home. Yates agreed to make 120 monthly payments of $54.05 at 18 percent interest, for a total of $6,486, for Central Construction to paint the sides and front of her house.[1] The contract was secured by a third deed of trust on Yates's home. Two months later, Yates died without paying the balance owed for the painting work.

William Collier lived with Yates at the time of her death. On July 22, 1991, the probate court held a hearing to consider Collier's petition to administer the estate. Because Yates's adult children objected to Collier's

---

[1] Although finance charges began accruing on March 14, 1990, Central Construction did not agree to "substantially complete[ ]" the work until six weeks later on May 30, 1990.

petition, on July 29, 1991, the court temporarily appointed the public administrator to cure a default with respect to the second trust deed.[2] On August 5, 1991, another hearing was held in which the court ordered the public administrator to continue to act to cure the default in the second deed of trust. On August 15, 1991, the court issued letters of special administration to the public administrator.[3] Shortly thereafter, the public administrator cured the default on the second deed of trust and paid off the outstanding balance on the note underlying the first trust deed. The public administrator did not know of the existence of the third deed of trust.

On August 15, 1991, the trustee on the third trust deed, Attorney's Equity National Corporation (Attorney's Equity), recorded a notice of default and election to sell. Before it recorded the notice, Attorney's Equity knew Yates had died and that the public administrator was the acting administrator of Yates's estate.[4] Four days later, Attorney's Equity mailed a copy of the default notice to Della Yates at 411 Ringwood Drive. Several weeks later, the trustee mailed additional default notices to (1) the "heirs and devisees of Della Yates" and (2) the "heirs and devisees of Della Yates, c/o Barbara Baker being duly appointed Temporary Public Administrator." These default notices were *not* sent to the public administrator's office. Instead they were mailed to 411 Ringwood Drive and to 206 Market Street in San Diego.[5] On November 22, 1991, the trustee mailed a notice of trustee's sale to (1) Della Yates; (2) the "heirs and devisees of Della Yates"; and (3) the "heirs and devisees of Della Yates, c/o Barbara Baker being duly appointed Temporary Public Administrator." The trustee again mailed these notices to 411 Ringwood Drive and 206 Market Street.

---

[2]Collier's attorney inadvertently drafted the July 29 order to state: "The Public Administrator, *Cheryl Carter*, is appointed to act on an interim basis" to "cure default currently pending with regard to the [Ringwood] property." (Italics added.) Carter was a deputy county counsel and not the public administrator. On August 15, 1991, however, the public administrator filed an ex parte petition making clear that on "August 5, 1991, this Court appointed Barbara A. Baker as Special Administrator with authority to cure default on estate real property at 411 Ringwood Drive, San Diego."

[3]The letters were valid until August 23, 1991. On October 22, 1991, the court later appointed the public administrator to administer the estate with general letters of administration.

[4]Attorney's Equity knew that the public administrator was acting executor of the estate based on information contained in the trustee's sale guarantee issued by Fidelity National Title Insurance Company. The Guarantee stated in part: "Title to [the Ringwood property] at the date hereof is vested in [¶] The heirs or devisees of Della Yates, subject to the administration of the estate of said decedent, Barbara Baker being duly appointed Temporary Public Administrator, Superior Court of said County, Case No. 154664."

[5]206 Market Street was the return address which Della Yates provided on the deed by which she took title to the Ringwood Drive home on June 20, 1974.

The public administrator did not receive and was unaware of the default notices and did not know the property was in foreclosure.[6] The trustee testified that if any of the notices were returned to its offices, the notices would have been thrown away.

Attorney's Equity thereafter recorded and published the notice of trustee's sale scheduled to occur on December 20, 1991. Jack Werdowatz purchased the trustee's deed for $5,066.73 at the December 20th trustee's auction. The trustee's deed contained the recital that "All requirements of law regarding the recording and mailing of copies of the Notice of Default and Election to Sell Under Deed of Trust and the recording, mailing, posting and publication of the Notice of Trustee's Sale have been complied with." Ten days later West End purchased the Ringwood property from Werdowatz for $12,000 subject to the existing $20,000 first trust deed. Before purchasing the property West End had no contact with Yates, Collier or Attorney's Equity.

Shortly thereafter, the public administrator learned for the first time the property had been sold. The public administrator brought an action in the probate court seeking to set aside the sale, arguing inter alia the trustee failed to comply with statutory notice provisions and violated due process. After a court trial, the court ordered West End to transfer title to the public administrator as administrator of Yates's estate and ordered the public administrator to pay West End an amount to reimburse it for the cancellation of the third deed of trust.[7] West End appeals from this order.

### DISCUSSION

### I.

West End contends the court erred in determining the trustee failed to provide proper notice of the default and sale.

### A.

■ The rights and powers of trustees in nonjudicial foreclosure proceedings are "strictly limited and defined by the contract of the parties and the statutes." (*I.E. Associates* v. *Safeco Title Ins. Co.* (1985) 39 Cal.3d 281, 287

---

[6]Although he lived at the Ringwood property, Collier testified he did not recall receiving these notices in the mail.

[7]Although West End mentions in passing, without any citation to legal authority, that the court "erred in not granting a Statement of Decision," the record plainly shows West End never affirmatively requested such statement. Absent an affirmative request, West End waived its right to assert error here. (See *Homestead Supplies, Inc.* v. *Executive Life Ins. Co.* (1978) 81 Cal.App.3d 978, 984 [147 Cal.Rptr. 22].)

[216 Cal.Rptr. 438, 702 P.2d 596]; see *McClatchey* v. *Rudd* (1966) 239 Cal.App.2d 605, 608 [48 Cal.Rptr. 783].) Thus, a trustee owes no duty to provide notices to any person unless the trust deed or the statute specifically provides for such notice. (*I.E. Associates* v. *Safeco Title Ins. Co.*, *supra*, 39 Cal.3d at p. 287; *Perez* v. *222 Sutter St. Partners* (1990) 222 Cal.App.3d 938, 943 [272 Cal.Rptr. 119]; see Miller & Starr, Cal. Real Estate (2d ed. 1989) § 9:133 at pp. 429-430.)

Civil Code section 2924b[8] governs notices of default in nonjudicial foreclosure proceedings. (*Perez* v. *222 Sutter St. Partners*, *supra*, 222 Cal.App.3d at p. 943.) Two subdivisions of section 2924b specify those persons to whom a trustee *must* mail a default notice. First, section 2924b, *subdivision (b)* requires a trustee to give notice to (1) the trustor or mortgagor at his or her last known address if different than the address specified in the deed of trust, and (2) to those persons who had recorded a statutory request for notice.[9] Second, section 2924b, *subdivision (c)* requires a trustee to give notice to several categories of parties, including "the successor in interest, as of the recording date of the notice of default, of the . . . interest . . . being foreclosed."[10] Section 2924b, subdivision (c)(1) requires this additional notice, however, only if the party acquired the interest "by an instrument

---

[8]All further statutory references are to the Civil Code unless otherwise specified.

[9]Section 2924b, subdivision (b) provides:

"The mortgagee, trustee, or other person authorized to record the notice of default shall do each of the following:

"(1) Within 10 business days following recordation of the notice of default, deposit or cause to be deposited in the United States mail an envelope, sent by registered or certified mail with postage prepaid, containing a copy of the notice with the recording date shown thereon, addressed to each person whose name and address are set forth in a duly recorded request therefor, directed to the address designated in the request and to each trustor or mortagor at his or her last known address if different than the address specified in the deed of trust or mortgage with power of sale.

"(2) At least 20 days before the date of sale, deposit or cause to be deposited in the United States mail an envelope, sent by registered or certified mail with postage prepaid containing a copy of the notice of the time and place of sale, addressed to each person whose name and address are set forth in a duly recorded request therefor, directed to the address designated in the request and to each trustor or mortgagor at his or her last known address if different than the address specified in the deed of trust or mortgage with power of sale.

"(3) As used in paragraphs (1) and (2), the 'last known address' of each trustor or mortgagor means the last business or residence address actually known by the mortgagee, beneficiary, trustee, or other person authorized to record the notice of default. The beneficiary shall inform the trustee of the trustor's last address actually known by the beneficiary. However, the trustee shall incur no liability for failing to send any notice to the last address unless the trustee has actual knowledge of it."

[10]Section 2924b, subdivision (c) provides: "The mortgagee, trustee, or other person authorized to record the notice of default shall do the following:

"(1) Within one month following recordation of the notice of default, deposit or cause to be deposited in the United States mail an envelope, sent by registered or certified mail with postage prepaid, containing a copy of the notice with the recording date show thereon,

sufficient to impart constructive notice of the . . . interest in the land . . . and provided the instrument is recorded in the office of the county recorder so as to impart that constructive notice prior to the recording date of the notice of default and provided the instrument as so recorded sets forth a mailing address which the county recorder shall use, as instructed within the instrument, for the return of the instrument after recording . . . ."

Before 1977, trustees were required to give notice only to those persons specified in the security instrument and to those who had recorded a special notice request. (*Garfinkle v. Superior Court* (1978) 21 Cal.3d 268, 274-275 [146 Cal.Rptr. 208, 578 P.2d 925]; *Perez* v. *222 Sutter St. Partners*, *supra*, 222 Cal.App.3d at p. 944.) In 1977, the Legislature added the requirement that the trustee send notice to the persons identified in section 2924b, subdivision (c). (222 Cal.App.3d at pp. 945-947.) ■ The purpose of this requirement was to "reduce harshness where interest holders neglect to use the statutory, special request procedure." (*Id.* at pp. 944-945.) In 1979, the Legislature again amended the statute in an effort to address a variety of continuing abuses in home mortgage procedures. (See Governor's Office, Dept. of Legal Affairs, Enrolled Bill Rep. for Sen. Bill No. 1126 (1979-1980 Reg. Sess.).) As part of this legislation, the Legislature added the subdivision

addressed to each person set forth in paragraph (2), provided that the estate or interest of any person entitled to receive notice under this subdivision is acquired by an instrument sufficient to impart constructive notice of the estate or interest in the land or portion thereof which is subject to the deed of trust or mortgage being foreclosed, and provided the instrument is recorded in the office of the county recorder so as to impart that constructive notice prior to the recording date of the notice of default and provided the instrument as so recorded sets forth a mailing address which the county recorder shall use, as instructed within the instrument, for the return of the instrument after recording, and which address shall be the address used for the purposes of mailing notices herein.

"(2) The persons to whom notice shall be mailed under this subdivision are:

"(A) The successor in interest, as of the recording date of the notice of default, of the estate or interest or any portion thereof of the trustor or mortgagor of the deed of trust or mortgage being foreclosed.

"(B) The beneficiary or mortgagee of any deed of trust or mortgage recorded subsequent to the deed of trust or mortgage being foreclosed, or recorded prior to or concurrently with the deed of trust or mortgage being foreclosed but subject to a recorded agreement or a recorded statement of subordination to the deed of trust or mortgage being foreclosed.

"(C) The assignee of any interest of the beneficiary or mortgagee described in subparagraph (B), as of the recording date of the notice of default.

"(D) The vendee of any contract of sale, or the lessee of any lease, of the estate or interest being foreclosed which is recorded subsequent to the deed of trust or mortgage being foreclosed, or recorded prior to or concurrently with the deed of trust or mortgage being foreclosed.

"(E) The successor in interest to the vendee or lessee described in subparagraph (D), as of the recording date of the notice of default.

"(F) The Office of the Controller, Sacramento, California, where, as of the recording date of the notice of default, a 'Notice of Lien for Postponed Property Taxes' has been recorded against the real property to which the notice of default applies."

(b) requirement that the trustee must send notice to the trustor at the address specified in the deed of trust *or at the owner's current address if the trustee has actual knowledge of such address.* This amendment reflected the Legislature's dual recognition of the importance of ensuring that homeowners, who may not be living at the address specified in the trust deed, were made aware of a potential foreclosure sale, while at the same time ensuring that trustees have clearly defined responsibilities to avoid time consuming and costly litigation. (*I.E. Associates* v. *Safeco Title Ins. Co., supra,* 39 Cal.3d at pp. 286-289.)[11]

### B.

■ West End argues Attorney's Equity was not obligated to send a notice to the public administrator because neither section 2924b, subdivision (b) nor section 2924b, subdivision (c) specifically mentions a requirement that notice be sent to the administrator of an estate.

■ In addressing West End's contention, we are mindful that our Supreme Court has emphasized the importance of respecting the Legislature's careful balancing of interests when resolving competing claims in the context of a nonjudicial foreclosure sale. (See, e.g., *I.E. Associates* v. *Safeco Title Ins. Co., supra,* 39 Cal.3d at p. 288; see also *Perez* v. *222 Sutter St. Partners, supra,* 222 Cal.App.3d at p. 944.) We thus focus primarily on the words of the relevant statutes. (See *Burden* v. *Snowden* (1992) 2 Cal.4th 556, 562 [7 Cal.Rptr.2d 531, 828 P.2d 672].) We additionally recognize that statutes must be construed in light of their historical background and evident objectives. (*Carlton Santee Corp.* v. *Padre Dam Mun. Water Dist.* (1981) 120 Cal.App.3d 14, 25 [174 Cal.Rptr. 413].) Statutes should be given a common-sense interpretation consistent with the apparent purpose and intent of the Legislature; absurd results should be avoided. (*San Diego Union* v. *City Council* (1983) 146 Cal.App.3d 947, 954 [196 Cal.Rptr. 45].)

---

[11]In *I.E. Associates*, the trust deed named the trustor (a partnership) and its address. Unknown to the partnership, its property manager failed to pay mortgage payments and the beneficiary commenced nonjudicial foreclosure proceedings. (*I.E. Associates* v. *Safeco Title Ins. Co., supra,* 39 Cal.3d at p. 283.) The trustee gave notice of sale to the address described in the trust deed and to the property manager. Both notices were returned by the post office. The trustee did not attempt to find the address of the partnership, although a reasonable inquiry would have disclosed the address. (*Id.* at p. 285.) As a result, the foreclosure sale was conducted without the trustor's knowledge. In affirming a summary judgment in favor of the trustee, the court held that absent actual knowledge of the partnership's address the trustee had no obligation to take reasonable steps to find the current address of the defaulting trustor. (*Id.* at pp. 284-289.)

■ Applying these principles, we agree with West End that a trustee who has no knowledge that a trustor has died complies with section 2924b by mailing a notice of default to the trustor at his or her last known address. The statutory scheme does not impose any duties upon a trustee to take any steps to locate a trustor or by implication to determine whether he or she is still living. (See *I.E. Associates* v. *Safeco Title Ins. Co.*, *supra*, 39 Cal.3d at pp. 285-289.) ■ The more difficult question, and the one presented here, is whether a trustee who has *actual knowledge* that a trustor has died and has *actual knowledge* that the deceased's estate is being administered by the public administrator is obligated to send a notice of default to the public administrator.

We conclude a trustee is obligated to send a notice to the executor under such circumstances. During probate, an estate takes over the responsibilities and obligations of the deceased with respect to property ownership. Thus, the executor of the estate essentially becomes the trustor, pending final distribution of the estate. While the Legislature did not intend to impose any responsibility on a trustee to take *affirmative steps* to locate a trustor, it made clear that it wanted to "compel him to [use the current address] if it is actually known" to the trustee. (*I.E. Associates* v. *Safeco Title Ins. Co.*, *supra*, 39 Cal.3d at p. 288.) Under the particular circumstances of this case, the trustee admitted that based on information contained in the trustee's sales guarantee, which was issued before the default notice was recorded, it knew that: (1) the trustor was dead, (2) the trustor's estate was in probate, and (3) of the identity of executor of the trustor's estate. In such situation, the trustee was obligated to mail a notice of default to the executor, pursuant to section 2924b, subdivision (b).

Significantly, the trustee here did recognize its responsibilities under the statute and attempted to give notice to the public administrator by mailing a copy of the default notice to the administrator. However, the trustee mailed the notice only to Yates's Ringwood home and to Yates's former 1974 address. West End argues such mailing fulfilled the trustee's statutory obligation. This argument, however, ignores the requirement that a trustor must mail the notice to the trustor's current address if the trustee has actual knowledge of such address. (§ 2924b, subd. (b).)

While there was no direct evidence in this case that the trustee had knowledge of the public administrator's address, viewing the record in the light most favorable to the prevailing party, the evidence supports a conclusion the trustee must have been aware of the public administrator's address. David Johnson, the Attorney's Equity trustee who handled the foreclosure

process with respect to the Ringwood property, testified he had worked in the trustee's field for 10 years. Before he recorded the notice of default, Johnson reviewed the trustee's sales guarantee which stated that the public administrator was the administrator for Yates's estate and set forth the probate court case number. Based on his experience, Johnson presumably knew where the public administrator's offices were located or at the very least that the public administrator did not receive mail at 411 Ringwood Drive. The public administrator is a public official whose address is listed in the phone directories and on numerous public documents. The address is easily accessible. On this record, the court had a reasonable basis for determining the trustee had actual knowledge of the public administrator's address.

■ In reaching our conclusion, we are unpersuaded by West End's argument that the trustee had no obligation to notify the public administrator because the public administrator could have and should have filed a statutory notice request. While we agree the public administrator had the opportunity to file such request because it was appointed to act as temporary executor no later than August 5, 1990, 10 days before the notice of default was filed (see *ante*, at p. 516, fn. 2), this fact does not eliminate the trustee's statutory responsibilities. The Legislature made clear that the purpose of the trustee's notice requirements was to ensure that interested parties receive notice even if such parties were entitled, but failed, to file a statutory notice request. (See *Perez* v. *222 Sutter St. Partners*, *supra*, 222 Cal.App.3d at p. 945.)

■ We are also unimpressed with West End's argument that notice was not required because this case falls within section 2924b, subdivision (c) which requires notice to "successors in interest" only in very limited circumstances which were not satisfied here. (See *ante* at p. 517, fn. 7.) ■
■ While a "successor in interest" has been broadly defined to mean " '[o]ne who follows another in ownership or control of property' " (see *Perez* v. *222 Sutter St. Partners*, *supra*, 222 Cal.App.3d at p. 948, fn. 8, quoting Black's Law Dict. (5th ed. 1979) p. 1283, col. 2), viewing the code section in its entirety, the Legislature could not have intended to include an executor or administrator of an estate within such definition. This is because 2924b, subdivision (c) requires notice only when the successor in interest acquires its interest by a recordable instrument. As West End recognizes, an executor does not generally acquire an interest in a property through a recordable instrument. Thus, acceptance of West End's position would require us to conclude the Legislature intended to remove completely an executor/administrator from the list of persons entitled to receive notice. Section 2924b, subdivision (c) and section 2924b, subdivision (b) were both

enacted to expand the categories of persons entitled to receive notice. Where a person falls within the category of parties entitled to receive notice pursuant to section 2924b, subdivision (b), the fact that the person did not acquire its interest so as to satisfy the requirements of subdivision (c) is immaterial.

## II.

Where as here, the trustee's deed recites that all requirements of law have been complied with, ". . . failure to comply with the notice requirements is a ground to cancel the sale only as against a party who is not a bona fide purchaser." (*Napue* v. *Gor-Mey West, Inc.* (1985) 175 Cal.App.3d 608, 621 [220 Cal.Rptr. 799]; *Wolfe* v. *Lipsy* (1985) 163 Cal.App.3d 633, 640 [209 Cal.Rptr. 801]; see § 2924.[12]) Moreover, "[w]hile mere inadequacy of price, standing alone, will not justify setting aside a trustee's sale, gross inadequacy of price coupled with even slight unfairness or irregularity is a sufficient basis for setting the sale aside." (*Whitman* v. *Transtate Title Co.* (1985) 165 Cal.App.3d 312, 323 [211 Cal.Rptr. 582].)

There is sufficient evidence in the record to support the probate court's implied conclusion that West End was not a bona fide purchaser. Norman Diamond, the owner of West End, testified that for the past 16 years he has been in the business of purchasing properties in foreclosure and frequently attends foreclosure sales. Diamond has purchased between 300 and 500 properties in foreclosure. Diamond attended the foreclosure sale at which Werdowatz purchased the Ringwood property. Diamond discussed the property with Werdowatz, who was also in the business of buying properties in foreclosure. Werdowatz told Diamond "there was a lot of juice [equity] in the property." Diamond drove to the Ringwood property. Diamond then called a title company representative to find out about the liens on the house. Shortly thereafter Diamond offered Werdowatz $12,000 for the property. Werdowatz accepted the offer.

Based on this evidence, and particularly the gross inadequacy of the sales price, the court was entitled to conclude that Diamond had notice of an irregularity in the sale and of the estate's interest in the property.

---

[12]Section 2924 provides in relevant part: "A recital in the deed executed pursuant to the power of sale of compliance with all requirements of law regarding the mailing of copies of notices or the publication of a copy of the notice of default or the personal delivery of the copy of the notice of default or the posting of copies of the notice of sale or the publication of a copy thereof shall constitute prima facie evidence of compliance with these requirements and conclusive evidence thereof in favor of bona fide purchasers and encumbrances for value and without notice."

## DISPOSITION

Judgment affirmed.

Kremer, P. J., and Huffman, J., concurred.